**168**

**BARRETVILLE BANK & TRUST COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 202–82C.**

United States Claims Court.

March 28, 1983.

Robert S. Brown, Cincinnati, Ohio, for plaintiff; Louis R. Lucas, Martha Yoakum and Canale, Mitchell, Lucas & Watson, Memphis, Tenn., of counsel.

Lynn Bush Ferguson, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant; Saul Schultz, U.S. Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

YANNELLO, Judge:

This case involves suit by a bank to recover the amount of its loans to a farmer which the farmer failed to repay. These loans had been extended with the understanding that the Farmers Home Administration (FmHA) of the Department of Agriculture had approved the farmer's application for FmHA Operating Loans (OL) and that FmHA would be advancing such monies to the farmer in the future. In the meantime, as a form of "interim financing" until such loans could be made by FmHA, the plaintiff bank was encouraged by an employee of FmHA to extend the amounts involved. The government's defense to this suit, as advanced in its pending motion for summary judgment, is based on the FmHA employee's lack of authority to enter into such arrangements and on regulations' express reservation of such authority.

### Background of Proceedings

The petition in this case was filed on April 23, 1982, and the answer was filed on June 22, 1982. The judge inquired of the parties as to further appropriate proceedings. Plaintiff responded, in a letter of July 17, 1982, that it desired a deferral of the pretrial order so that it could undertake depositions. (The court has no further information as to whether such discovery was undertaken.)

Defendant on July 16, indicated that it desired to file a dispositive motion. In a letter sent to both parties of July 26, 1982, the judge advised the parties that pretrial would be deferred until September 3, 1982, to allow defendant to file the desired motion.

Defendant did, in fact, file its motion for summary judgment on September 7, 1982. The plaintiff has filed no response or cross-motion although, clearly, plaintiff has had ample opportunity to note that such dispositive motion was anticipated and was filed. The matter is thus ready for decision.

### Background of Events[1]

Mr. James A. Rogers, the Shelby County Supervisor of the United States Depart-

1. As will be discussed in this section of the opinion, this case involves an FmHA operating loan (OL) and does not present a suit by a bank to recover loans which had been extended

based on an FmHA guaranty pursuant to the Emergency Livestock (EL) loan procedures (where the regulations, such as 7 C.F.R. §§ 1845.2, 1845.13(b) and (c), and, with respect

ment of Agriculture, Farmers Home Administration (FmHA), in Covington, Tennessee, wrote to the plaintiff's officers, on April 11, 1980, as follows:

James M. Thomason has applied for an operating loan from Farmers Home Adm. This application has been approved and in the amount of $19,300. This loan docket will be mailed to the finance office on July 1st for funding. If for some reason there are not adequate funds at that time to fund the loan, Farmers Home Administration will obtain its new funding for the 1981 fiscal year on Oct. 1st 1980 and the loan will be made then.

If your bank could furnish Mr. Thomason with interim financing in the approximate amount of $15,000–$18,000 FmHA will see that the loan plus interest will be repaid as soon as the check is received.

On May 28, 1980, Mr. Rogers again wrote to plaintiff's officers, as follows:

Subject applicant has acquired an additional 100 acres of land.... We have increased his loan amount to $24,000.00 and will order the loan check as soon as the loan funds are available.

We would appreciate it if you could extend an additional $5,000 to Mr. Thomason until this loan check is received. We will see that this advance is paid along with accrued interest.

Based upon these communications, plaintiff loaned to Mr. Thomason some $25,690.49 including interest. While Mr. Thomason's loan application was approved by FmHA, operating loan money was never made available to him due to FmHA fund shortages.

Plaintiff was unsuccessful in its attempts to recoup these funds from Mr. Thomason and applied to the FmHA for payment. FmHA denied plaintiff's request and plaintiff now seeks to re-recover this amount from the United States.

### Decision

Defendant argues that it is not liable to pay the sums in issue since the representa-

to employee authority, § 1845.39(a), envision, to some extent, FmHA guaranty). *See, e.g.,*

tions of its employee, Mr. Rogers, were not authorized and were, indeed, expressly prohibited by the governing regulations.

Defendant cites particularly the provisions of 7 C.F.R. § 1941.23(b)(1) (1980 ed.) as follows:

FmHA employees will not guarantee repayment of advances from other credit sources, either personally or on behalf of applicants, borrowers, or FmHA.

Defendant cites no cases interpreting this regulation.

A similar regulation, 7 C.F.R. § 1831.8 (1976 ed.), as redesignated at § 1921.101, *et seq.,* in 1977, 42 F.R. 44669, 44692, and as again redesignated at § 1941.1, *et seq.,* in 1978, 43 F.R. 55883) was discussed by the Court of Appeals for the Federal Circuit in *Eldon Dahl v. United States,* 695 F.2d 1373 (Fed.Cir.1982) as part of a discussion of the general practices involved in issuing Operating Loans. The court stated as follows (p. 1379):

Having approved the loan, the County Supervisor then submits a request to the FmHA's Finance Office in Kansas City to issue and forward the loan proceeds. 7 C.F.R. 1831.35. Since there is ordinarily a 30-day delay period until the check is received, a borrower customarily arranges for interim financing with a local commercial bank. In such case the *FmHA agrees with the borrower* that it will pay off the interim financing with the pending loan proceeds as long as the borrower uses the bank's interim financing for a purpose expressed in the farm and home plan. *No legal relationship is created by this procedure between the FmHA and the bank, because the County Supervisors have no authority to guarantee repayment of interim financing.* 7 C.F.R. 1831.8(b). There is, however, no statute or regulation that prohibits the parties from agreeing that the FmHA will pay off the interim financing so long as the borrower does not use the bank's interim financing contrary to his agree-

*Palmetto Bank v. The United States,* Ct.Cl. No. 14–79, (Trial Div., July 28, 1981) (Merow, T.J.)

ment with the FmHA and his farm and home plan. [Emphasis supplied.] [2]

The cited regulation supports defendant's contention.

The plaintiff has failed to furnish the court with any response to defendant's motion and thus has failed to offer any citation to other regulation or case law or facts which might support any findings that Mr. Rogers did possess the requisite authority to bind the government to the guarantee agreement or that Mr. Rogers' actions are binding on the government notwithstanding any lack of his own authority (e.g., through ratification by individuals empowered to bind the government.)

Based on the foregoing, it is found that Mr. Rogers lacked the authority necessary to bind the United States to repay to the plaintiff bank the amounts it had advanced to Mr. Thomason.

The case law is clear that, where such authority is lacking, the government is not liable for actions by its employees. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); and *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972).

## CONCLUSION OF LAW

The defendant's motion for summary judgment is granted, and the petition is to be dismissed.

**2.** The *Dahl* case cited in the text involved a suit by the farmer/borrower, *not* the bank, to obtain the amounts of the Operating Loan which had been approved but not advanced by FmHA. As the court opinion notes, "The FmHA refused to pay the bank the interim loan when the FmHA funds arrived, because its regulations prohibited the use of operational funds [for the purposes expended by the borrower]." It was on this circumstance (the borrower's status vis a vis FmHA) that the court's opinion centered.

The instant case is unlike *Dahl* in that, here, the bank is suing directly based on FmHA's representations concerning the interim financing, and the funds were not advanced to the borrower because of fund-unavailability rather than any departure by the borrower from the prescribed purposes of such operating loans.

Nonetheless the portion of the court's opinion in *Dahl* which is quoted in the text is of interest in the context present here: the relationship, if any, between *FmHA and the bank* with respect to interim financing and the authority of FmHA personnel.