**HAMILTON BANK**

v.

**The UNITED STATES.**

**No. 133–82C.**

United States Claims Court.

Sept. 20, 1984.

Robert M. Frankhouser, Jr., Lancaster, Pa., for plaintiff. Michael L. Seabolt, Washington, D.C., attorney of record.

Mary S. Mitchelson, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath, Michael D. Morin, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant. Robert Jude Jenison, U.S. Dept. of Agriculture, Washington, D.C., of counsel.

## ORDER

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Hamilton Bank, bases this action on oral promises of repayment from a county supervisor of the Farmers Home Administration (the FmHA), United States Department of Agriculture, in connection with loans made by the plaintiff to Robert and Anne Lavin (the Lavins). The plaintiff contends that the oral promises by the county supervisor and the bank's reliance on them created contracts between the plaintiff and the Government.

The case is now before the court on a stipulation of facts, cross-motions for summary judgment filed by the parties, and oral arguments presented by counsel for the parties before the court.

### The Facts

Hamilton Bank (the bank) is a banking institution doing business in Lancaster, Pennsylvania.

At the times involved in this litigation, the Lavins were egg farmers in Lancaster County, Pennsylvania, and Roy H. Giesmann (Mr. Giesmann) was employed by the FmHA as the County Supervisor for Lancaster County.

The FmHA is authorized to make various types of loans to farmers. Included in the list (among others) are farm ownership

loans, operating loans, and economic emergency loans. Between 1975 and 1979, the FmHA extended farm ownership loans and operating loans to the Lavins.

As of 1979, the bank had also extended loans to the Lavins, and the bank held a first mortgage on the Lavins' farm.

The customary procedure for the processing by the FmHA of an application from a farmer for a loan is for the county supervisor, after receiving the application, to submit it to the county committee for review and recommendation. If the county committee acts favorably on the application, it so certifies and returns the application, with the certification, to the county supervisor for final approval (provided the amount of the loan applied for is within the scope of the county supervisor's approval authority, as fixed by regulation) or disapproval.

At the time involved here, Mr. Giesmann, as County Supervisor for Lancaster County, had the authority to approve economic emergency loans in amounts up to and including $350,000, upon receiving favorable certifications from the county committee.

When a county supervisor approves a loan within the scope of his authority, funds with which to make the loan are requested from the National Finance Office of the FmHA. It is not unusual for as much as 6 months to pass between the time when a farmer submits an application for a loan and the time when funds for the loan are released by the FmHA.

In November 1979, the Lavins applied to the FmHA, and received the necessary approval, for an economic emergency loan in the amount of $70,000.

In January of 1980, the Lavins needed funds immediately and requested a loan of $25,000 from the bank, because the funds from the $70,000 loan previously approved by the FmHA were not readily available. Mr. Giesmann advised the bank that if it would advance $25,000 to the Lavins, the FmHA would repay the bank from the proceeds of the $70,000 loan which had been approved by the county committee and by Mr. Giesmann. Pursuant to this representation from Mr. Giesmann, the bank extended a loan of $25,000 to the Lavins.

On March 24, 1980, funds for the $70,000 loan to the Lavins having been made available by the FmHA, Mr. Giesmann made the $70,000 loan to the Lavins. From those funds, the bank received $17,501.10 as partial reimbursement for the $25,000 loan which it had made to the Lavins. At the time, the loan had a balance of $25,713.71. The remainder due on the loan was not paid because of the Lavins' increased need for funds.

In May of 1980, the Lavins requested an additional loan of $40,000 from the bank. A representative of the bank got in touch with Mr. Giesmann concerning the Lavins' application. Mr. Giesmann believed that a $10,000 loan from the FmHA to the Lavins was necessary, because he considered the Lavins' situation to be desperate and that their business would fail unless funds in that amount were advanced to them. Mr. Giesmann informed the bank's representative that if the Lavins would submit to the FmHA a loan application for an economic emergency loan in the amount of $10,000, the application would be submitted to the county committee for consideration.

It is not known from the record whether the Lavins actually prepared and submitted to the FmHA a formal application for a $10,000 loan. It is known, however, that the county committee considered the question of whether a $10,000 loan to the Lavins would be appropriate; that the county committee determined that such a loan would be appropriate and so advised Mr. Giesmann; and that Mr. Giesmann, in turn, informed the bank that the county committee had approved the making of a $10,000 loan to the Lavins. It is also known that Mr. Giesmann advised the bank that if it extended a $10,000 loan to the Lavins, the FmHA would reimburse the bank for the advance.

Following Mr. Giesmann's oral representation that the FmHA would reimburse the

bank if it extended a $10,000 loan to the Lavins, the bank made a loan of $10,432.89 to the Lavins.

Mr. Giesmann later left the position of FmHA County Supervisor for Lancaster County; and he never completed any of the paper work necessary for the making of a $10,000 loan to the Lavins.

The FmHA has not reimbursed the bank for the balance due on the $25,000 loan which the bank made to the Lavins in January 1980, or for any part of the $10,432.89 loan which the bank made to the Lavins in May 1980. The bank seeks such reimbursement in this action.

In January of 1981, the Lavins filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania a petition for discharge in bankruptcy (Bankruptcy No. 81–0046T).

### The Issue

The primary issue to be decided in the case is whether Mr. Giesmann had the authority to promise the repayment of the loans which the bank made to the Lavins in January and May of 1980.

### Discussion

In addition to making loans of the various types previously mentioned (farm ownership, operating, economic emergency, etc.) directly to farmers, the FmHA is also authorized to guarantee the repayment of not more than 90 percent of loans made to farmers by other lenders. The making of direct loans to farmers and the guaranteeing of loans to farmers made by other lenders are both governed by regulations set out in Title 7, Code of Federal Regulations.

Subpart F of part 1980 of 7 C.F.R., revised as of January 1, 1980, was applicable to the guaranteeing of economic emergency loans made in 1980. Subpart F prescribed the papers that were to be filed by a farmer or a lender desiring a guarantee from the FmHA in connection with an economic emergency loan, it prescribed the steps that were to be taken by the FmHA

in connection with the processing of such an application, and it prescribed the documents that were to be executed by the parties if the FmHA determined that the necessary requirements had been met. None of the prescribed papers was filed, none of the prescribed steps was taken, and none of the prescribed documents was executed in connection with the loans which the bank made to the Lavins in January and May of 1980.

Obviously, therefore, the oral promises of repayment which the county supervisor made to the bank in connection with the bank's loans of January and May 1980 to the Lavins did not constitute proper guarantees under the pertinent regulations.

The plaintiff's main reliance is on the circumstance that the 1980 regulations governing FmHA operating loans and farm ownership loans specifically provided, in 7 C.F.R. §§ 1941.23(b)(1) and 1943.27, respectively, that FmHA employees should not guarantee the repayment of advances made from other credit sources, whereas the 1980 version of subpart F of part 1980 of 7 C.F.R., governing guarantees of economic emergency loans, did not contain any such prohibition. The plaintiff argues that "[t]he absence of such a prohibition in the economic emergency loan program, especially in the face of specific prohibitions in other loan programs, is compelling and overwhelming evidence that Giesmann [the county supervisor] did in fact have the authority to guaranty [sic] the Hamilton Bank's advances from economic emergency loans extended by the FmHA to the Lavins."

 The plaintiff's conclusion is untenable. It is elementary in our system of jurisprudence that an administrative official can only exercise the authority that has been conferred upon such official and the Government is not bound by the unauthorized actions of its agents. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972).

■ Moreover, the bank in this case has the affirmative burden of showing that the county supervisor was duly authorized to make the promises of repayment on which the bank relies. *State of Arizona v. United States*, 216 Ct.Cl. 221, 228, 575 F.2d 855, 859 (1978); *Alabama Rural Fire Insurance Co. v. United States*, 215 Ct.Cl. 442, 458–59, 572 F.2d 727, 736 (1978). This burden has not been discharged by the plaintiff.

■ Also, the bank, in dealing with the county supervisor, was under an obligation to ascertain for itself the scope of the county supervisor's authority, as the Government is not estopped to deny the acts of its agents who have acted beyond the scope of their authority. *Urban Data Systems v. United States*, 699 F.2d 1147, 1154 (Fed.Cir.1983).

*Conclusion*

For the reasons previously stated, the court concludes that there is no genuine issue between the parties in this case as to any material fact, that the plaintiff is not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

The plaintiff's motion for summary judgment is therefore denied, and the defendant's cross-motion for summary judgment is granted.

The clerk will dismiss the complaint in accordance with Rule 58.

IT IS SO ORDERED.