**BANK OF ADVANCE**

v.

**The UNITED STATES.**

**No. 160–83C.**

United States Claims Court.

Nov. 6, 1984.

John L. Cook, Cape Girardeau, Mo., for plaintiff.

Lorraine B. Halloway, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Donald R. Kronenberger, Jr., U.S. Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

This case is before the Court on cross motions for summary judgment submitted with oral argument. The plaintiff, Bank of Advance (the bank) located in Advance, Missouri, brings this action against the defendant, Farmers Home Administration (FmHA), for breach of an express contract. The plaintiff alleges that the FmHA County Supervisor promised in writing to guarantee the plaintiff's loan to a James L. Moore, and that the defendant refused to pay the loan upon demand. The plaintiff seeks the unpaid principal of Moore's promissory note, interest that has accrued on the note, and costs.

The defendant has moved for summary judgment, arguing: 1) that the plaintiff cannot establish that it obtained its guarantee in accordance with federal regulations;[1] 2) that the County Supervisor lacked the authority to guarantee the plain-

tiff's advance; and 3) that the condition precedent for reimbursement never occurred. The plaintiff has cross moved for summary judgment contending that the defendant has breached its contract to guarantee the loan and is estopped to deny the existence of the contract. This Court finds that the extent of the County Supervisor's authority is a genuine issue of material fact which precludes granting summary judgment. The Court therefore denies both motions.

### FACTS

Neither party disputes the following facts. On May 1, 1980, the FmHA loaned James L. Moore $32,300 pursuant to the Emergency Agricultural Credit Adjustment Act of 1978, 7 U.S.C. § 1961 (Supp. V 1981). Moore had difficulties repaying this loan, but he told the FmHA County Supervisor that he had a one-third interest in a 423-acre family farm involved in probate proceedings, and he promised that he would pay the FmHA once the estate was settled.

On August 17, 1980, Moore applied to the FmHA for an emergency loan under the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921 *et seq.* On December 10, 1980, the County Committee deferred action on the loan request for lack of sufficient information. Moore did not pursue his loan request until March 6, 1981 when he reapplied for an emergency loan. During June of 1981 the County Supervisor considered giving Moore a reorganization loan to help pay his outstanding debts, to help him buy a tractor, and to have the current FmHA delinquent loan secured by a deed of trust on the real estate Moore was to inherit. In connection with the proposed reorganization loan, the County Supervisor wrote to the plaintiff bank on June 18, 1981 as follows:

> We are in the process of making Mr. James L. Moore an Emergency Loan. If you will advance Mr. Moore $36,000, you

---

1. 7 C.F.R. §§ 1980 *et seq.* (1981) define the authority of the FmHA to guarantee loans.

will be reimbursed when his loan is closed.

The $36,000 will be used to purchase a 2 + 2, 4 wheel-drive International Tractor from Schneider's Implement Co. in Advance, Missouri. The tractor will be used as security for this advance and Farmers Home Administration will pay this advance in full, including interest, when Mr. Moore's Emergency Loan is closed.

Relying upon this communication, the plaintiff loaned Moore $36,004 in exchange for a promissory note bearing 19.75% interest. The plaintiff also took a security interest in the tractor.

On August 19, 1981, Moore received his interest in the 423-acre farm, but he did not inform the County Supervisor. Instead, on September 28, 1981 he purchased a farm in Bollinger County, Missouri, using his inherited real estate to secure a mortgage loan from the Equitable Assurance Society. After discovering this mortgage, the County Supervisor informed the plaintiff by telephone that the FmHA would make no loan to Moore because there was no equity to secure it.

The plaintiff bank then demanded that the FmHA reimburse it for the advances it had made to Moore. The FmHA refused. On December 23, 1982, the plaintiff repossessed and sold the tractor. On March 21, 1983 the plaintiff filed this lawsuit seeking to recover the remaining principal balance ($19,700), the interest that has accrued on the note ($9,606.50 from the date of issue until March 4, 1983 and $8.84 per day since then), and costs.

## DISCUSSION

The defendant contends that the letter promising to guarantee the loan had no legal effect and did not bind the Government because the plaintiff did not follow the proper procedures for obtaining a Loan Note Guarantee. *See* 7 C.F.R. §§ 1980 *et seq.* (1981) for those procedures. The plaintiff, however, does not allege that the letter constitutes a guarantee pursuant to the guarantee program set forth in the regulations. Instead, the plaintiff contends that the letter created an express contract to guarantee the interim financing arrangement. Such a contract is not governed by the regulations. The defendant's arguments are therefore inapposite.

The central issue presented is whether the County Supervisor had the actual authority to enter into such an agreement.[2] It is well established that the Government is not bound by the unauthorized acts of its agents. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). It is also well established that the Government is not bound by the acts of an agent who has only apparent authority. *Jackson v. United States*, 216 Ct.Cl. 25, 41 n. 2, 573 F.2d 1189, 1197 n. 2 (1978).

A situation similar to the present case occurred in *Dahl v. United States*, 695 F.2d 1373 (Fed.Cir.1982). In *Dahl*, the Court explained the usual interim financing procedures followed by the FmHA, the borrower, and the lender:

> Since there is ordinarily a 30-day delay period until the check is received, a borrower customarily arranges for interim financing with a local commercial bank. In such case the FmHA agrees with the borrower that it will pay off the interim financing with the pending loan proceeds as long as the borrower uses the bank's interim financing for a purpose expressed in the farm and home plan. No legal relationship is created by this procedure between the FmHA and the bank, *because County Supervisors have no authority to guarantee repayment of interim financing.*

*Id.* at 1379 (emphasis added) (citing 7 C.F.R. § 1831.8(b)).

---

**2.** The plaintiff also contends that the Government should be equitably estopped to deny the existence of the contract. But the plaintiff must show that the County Supervisor had actual authority before estoppel can apply. *See Emeco Industries, Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973).

To establish that the County Supervisor in the present case lacked the authority to guarantee the interim loan, the defendant relies upon *Dahl* and its progeny *Barretville Bank & Trust Co. v. United States*, 2 Cl.Ct. 168 (1983), and *Southern States Henry Cooperative, Inc. v. United States*, 4 Cl.Ct. 370 (1984). But in each of these cases, the County Supervisor had tried to guarantee repayment of an *operating loan*, though the following regulation applied: "FmHA employees will not guarantee repayment of advances from other credit sources, either personally or on behalf of applicants, borrowers, or FmHA." 7 C.F.R. § 1941.23(b)(1) (1982). Because this regulation does not apply to *emergency loans*, these cases do not establish that county supervisors lack authority to enter into interim financing agreements under the Emergency Loan Program.

The regulations governing the Emergency Loan Program define an "approval official" as follows: "An FmHA field official who has been delegated loan and grant approval authorities within applicable loan programs, subject to the dollar limitations contained in tables available in any FmHA office (see FmHA Instruction 1901–A Exhibit C)." 7 C.F.R. § 1945.54(a)(2) (1981). The parties have submitted neither the tables mentioned in the regulation nor FmHA Instruction 1901–A Exhibit C. The parties have neither submitted affidavits nor cited any law or regulation that establishes whether the County Supervisor had actual authority to enter into the alleged guarantee contract with the plaintiff.

Of course, it is the plaintiff's responsibility to show that the government agent acted within his authority. *E.g., Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972). *See also Hamilton Bank v. United States*, 6 Cl.Ct. 267 (1984) (defendant is entitled to summary judgment where question of 7 C.F.R. § 1945.54(a)(2) did not arise and plaintiff did not bear its burden of showing that FmHA supervisor had authority to guarantee interim financing of emergency loan). There may be evidence that defines the government agent's authority. But in this case the plaintiff has had little chance to discover that evidence because on June 6, 1983 this Court stayed discovery pending its decision on the defendant's motion for summary judgment. The plaintiff should have a reasonable opportunity to present that evidence. Therefore, the Court cannot resolve this case without further proceedings.[3]

## CONCLUSION

The cross motions for summary judgment are denied.

---

**3.** The defendant contends that it is entitled to summary judgment even if a contract exists, because the promise made by the County Supervisor contains a condition precedent: "If you will advance Mr. Moore $36,000, you will be reimbursed *when his loan is closed.*" (emphasis added). Since the FmHA never closed the loan, it argues that it need not reimburse the bank.

This argument has no merit. First, the Court could interpret the underlined phrase in two ways. The phrase either: 1) fixes a *time* for the defendant's performance; or 2) *conditions* the defendant's performance. The Court prefers the interpretation that reduces the plaintiff's

risk of forfeiture. *See, e.g., Restatement (Second) of Contracts* § 227(1) (1981). Second, even if the phrase is a condition precedent, the defendant's conduct has excused the condition. If the County Supervisor had the authority to authorize an emergency loan, the defendant had the power to close that loan. "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." S. Williston, *A Treatise on the Law of Contracts* § 677 (3d ed. 1961).