**PEOPLE'S BANK & TRUST CO.**

v.

**The UNITED STATES.**

No. 181–82C.

United States Claims Court.

March 29, 1985.

K. Richard Hawley, Mount Vernon, Ind., attorney of record for plaintiff.

R. Anthony McCann, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This case comes before the Court in a suit for breach of contract by the Farmers Home Administration (FmHA). The plaintiff seeks recovery of amounts extended in the form of an interim loan to a farmer, pending the closing of his previously approved FmHA loan. The Government, however, after approving the loan terms, cancelled the loan before disbursing the loan proceeds to the farmer and denied liability for the plaintiff's extension of an interim loan. It is undisputed that the plaintiff relied on the written and oral representations of FmHA supervisory personnel to the effect that the loans had been formally approved. The defendant moved for summary judgment, and the plaintiff filed a cross-motion for summary judgment. For the reasons set forth below, both the defendant's motion for summary judgment and the plaintiff's cross-motion for summary judgment are denied.

### Facts

In the spring and summer of 1980, the People's Bank & Trust Co., Mt. Vernon, Indiana (hereinafter bank), loaned Steven and Rebecca Strupp, a local farming couple, some $68,500 for use in their farming operation. The commercial loans involved were secured by the Strupps' farm machinery and crops and were payable, with interest, on January 9, 1981.

On January 9, 1981, the Strupps defaulted on the above loans, which had a remaining balance of approximately $51,000. After the default, the Strupps began looking for alternative financing for their farming operation, since the bank refused to extend further credit to them and since they again needed financing for the upcoming growing season.

As a result, Mr. Strupp applied to the FmHA for an Economic Emergency Loan. 7 C.F.R. §§ 1980.501 *et seq.* (1981). The FmHA is a Federal Government agency that is authorized to provide a supplemental source of credit to farmers and rural residents, when the farmers are otherwise unable to obtain credit from private financial institutions. 7 U.S.C. §§ 1922 *et seq.* (Supp. V 1981); 42 U.S.C. §§ 1471 *et seq.* (Supp. V 1981).

On March 26, 1981, Mr. K.W. Goss, the plaintiff's president, and Ms. Eleanor Hogan, the plaintiff's assistant vice president, contacted Mr. Ray Wilke, the Economic Emergency Loan Supervisor (EELS) at the local FmHA office serving the Mt. Vernon area, concerning the Strupps' indebtedness to the bank and their application for further FmHA financing. In that conversation, Mr. Wilke advised the bank officials that the FmHA was interested in assisting the Strupps if the bank was willing to agree to several proposals. Mr. Wilke indicated that the FmHA would pay the bank, from the FmHA loan proceeds to the Strupps, $12,000 immediately on the Strupps' existing debt and $10,000 annually thereafter until the debt was satisfied.

The bank officials agreed to this proposal, since the FmHA would be controlling all proceeds from the sale of the Strupps' future crops. As consideration for such agreement, Mr. Goss agreed not to sue upon the existing default indebtedness and not to levy upon the Strupps' farm machinery. In addition, since the spring planting season was imminent and since the FmHA loan funds would not be available for distribution until after the planting season had passed, the bank agreed to provide interim financing for the Strupps' farming opera-

tion, after Mr. Wilke assured the bank that any such interim financing would be repaid directly by the FmHA out of the proceeds of the Strupps' loan.

On April 1, 1981, Mr. Steven Strupp visited the bank in order to make arrangements for the agreed upon interim financing. However, since the FmHA letter discussing the Strupps' loan, which Mr. Strupp had in his possession, did not indicate that the loan had been formally approved, the bank refused to complete the interim financing. On April 2, 1981, Mr. Strupp again returned to the bank with a letter dated April 2, 1981, signed by Mr. Wilke on behalf of the FmHA, which stated that the Strupps' FmHA loan for $79,380 had been formally approved. The letter also set forth various approved uses for this loan.[1] Included in this list of approved uses was the sum of $40,800 for refinancing, with $12,000 designated as a payment to the plaintiff. Further, Mr. Wilke's letter stated that the "money will be available in approximately 45 days * * *." On April 2, 1981, in reliance on Mr. Wilke's letter, the plaintiff advanced $24,800 to the Strupps, secured by a promissory note in this amount. On April 3, 1981, the bank provided the Strupps with an additional $50,000 in interim financing, secured by another promissory note, to be used as operating money for the 1981 crop year. The plaintiff authorized this further extension of credit in reliance upon the express assurances of Mr. Wilke.

On April 8, 1981, Ms. Hogan spoke with the FmHA County Supervisor, James Harris, regarding the disbursements of the interim financing. Mr. Harris informed Ms. Hogan that disbursement could be made directly to Mr. Strupp upon the authorization of the FmHA. On or about April 9, 1981, Mr. Harris wrote a letter to the bank indicating that the attached list of bills were scheduled for refinancing when the Strupps' FmHA loan was closed. Subsequently, by notations on certain bills dated April 13, April 27, May 5, May 11, May 18, and June 1, 1981, Mr. Harris expressly indicated to the bank that certain expenses would be eligible for reimbursement when the FmHA loan was closed.

On May 6, 1981, Mr. Harris forwarded a "nondisturbance agreement" to the plaintiff, whereby the plaintiff would agree not to assert its security interest in the Strupps' property without obtaining the prior written consent from the FmHA. In reliance on the statements made by Mr. Wilke and Mr. Harris, the plaintiff executed the agreement, binding the plaintiff not to exercise its lien rights until 1988. Absent this agreement, the plaintiff would have been able to foreclose on the bank's liens, since the Strupps had defaulted on their 1980 indebtedness to the plaintiff.

In September of 1981, the FmHA notified the plaintiff that the loan to the applicant had been cancelled, since the Strupps had reconveyed a portion of their land, which the FmHA had intended to use as security for its loan, to the contract seller. As a result, the plaintiff has been forced to suffer the loss of approximately $85,000 due to its reliance on the statements of the FmHA officials that the loan had been formally approved and that the interim financing, extended to the Strupps, would be repaid by the Government.

The plaintiff filed its complaint in this Court on April 12, 1982, alleging that Mr. Wilke's letter of April 2, 1981, on behalf of the FmHA, constituted a letter of credit or guarantee. The defendant has now moved for summary judgment, and the plaintiff has cross-moved for summary judgment.

1. "To Whom it May Concern: Steve Strupp is approved for $79,380.00 at 5%—$40,800 will be used for refinancing, the remainder of $38,-500.00 will be used for crop production money in 1981, and due back in one year. The $40,-800.00 will be made for 7 years. The uses of money will be set up as follows: Refinancing $40,800 * * * People's Bank: $12,000.00. The $38,580.00 plus $65,420.00 will be used for 1981 operating money. The $65,420 will be made at 13% and will also be due back in one year. FmHA security for this loan will be: Land, crop lien, and second on machinery, subject to People's Bank and Trust Co. Money will be available in approximately 45 days for above refinancing and crop money will be available at the same time."

## Discussion

There appear to be two distinct issues that must be considered by this Court in ruling on the parties' motions. First, whether the FmHA Economic Emergency Loan Supervisor and/or the FmHA County Supervisor possessed the actual authority to enter into an interim loan guarantee contract with the bank and, if so, whether such a contract was created under the facts stated herein. Second, even if neither the EELS nor the County Supervisor possessed the requisite actual authority, whether the Government should be equitably estopped from asserting the defense of lack of authority under the instant facts.

In *Prestex, Inc. v. United States*, 3 Cl.Ct. 373, 377 (1983), this Court recognized that:

It is a well recognized rule that "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). *See also Lin v. United States*, 3 Cl.Ct. 213, 216 (Cl.Ct.1983); *Dalaly v. United States*, 3 Cl.Ct. 203, 206 (1983). *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972). The government is not bound by acts of its agents beyond the bounds of that agent's actual authority. *Federal Crop Ins. Corp. v. Merrill, supra. See also C.P. Squire Contractors v. United States*, 716 F.2d 865, 868 (Fed. Cir.1983); *City of Klawock v. United States*, 2 Cl.Ct. 580, 586 (1983), [732 F.2d 168 (Fed.Cir.1984)].

■ The EELS is an employee of the county office of the FmHA, under the general supervision of the County Supervisor. As such, both officials are granted authority "in accordance with applicable laws, and the regulations implementing these laws."

7 C.F.R. § 1900.3 (1981). In addition, the County Supervisor has been given loan approval authority "consistent with the program requirements and available resources." 7 C.F.R. § 1901.2 (1981). The FmHA's regulations do allow, under certain limited circumstances, for the repayment of interim commercial financing when certain loans are closed. *See* 7 C.F.R. § 1942.17(n)(2) (1981) (Community Facility Loans); 7 C.F.R. § 1944.175(a) (1981) (Farm Labor Housing Loan). Further, the FmHA regulations also authorize Government guarantees of certain types of commercial loans. *See* 7 C.F.R. §§ 1980.501 *et seq.* (1981) (Economic Emergency Loans can be made through a Government guaranteed line of credit with a commercial lender). Here, however, neither party has cited any law or regulation which conclusively establishes whether either the EELS or the County Supervisor had the actual authority to enter into the alleged interim guarantee contract with the plaintiff pertaining to Economic Emergency Loans. *See* 7 C.F.R. §§ 1980.501 *et seq.* (1981). This Court has also been unable to locate any express provision which is determinative of this question.[2] Therefore, this Court believes that further factual and legal development of this question is essential to a full, fair, and equitable resolution of this matter. *Accord Bank of Advance v. United States*, 6 Cl.Ct. 535, 538 (1984). *Cf. Hamilton Bank v. United States*, 6 Cl.Ct. 267, 270 (1984).

■ Moreover, even if it is determined that neither the FmHA EELS nor the FmHA County Supervisor possessed the actual authority to contract with the plaintiff in this case, it is possible that this Court could find, after a thorough airing of the facts in this case, that the Government should be equitably estopped to deny its lack of authority. Such a determination depends upon whether the Government's actions constitute "affirmative miscon-

**2.** While 7 C.F.R. § 1941,23(b)(1) (1981) specifically provides that, with regard to FmHA Operating Loans, FmHA employees will not guarantee repayment of interim advances from other credit sources, this section does not apply to FmHA Economic Emergency Loans, 7 C.F.R. §§ 1980.501 *et seq.* (1981), which are at issue herein. *See Bank of Advance v. United States, supra*, 6 Cl.Ct. at 538.

duct." *Portmann v. United States*, 674 F.2d 1155, 1164 (7th Cir.1982). *See Pratte v. National Labor Relations Board*, 683 F.2d 1038, 1041–42 (7th Cir.1982); *United States v. Lazy FC Ranch*, 481 F.2d 985, 988–89 (9th Cir.1973). *See also Heckler v. Community Health Services of Crawford County, Inc.*, —— U.S. ——, ——, 104 S.Ct. 2218, 2228, 81 L.Ed.2d 42, 57 (1984); *United States Immigration and Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7, 10 (1973); *Broad Avenue Laundry and Tailoring v. United States*, 231 Ct.Cl. 1, 5, 681 F.2d 746, 748 (1982). As recently as May 21, 1984, the United States Supreme Court stated that:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well-settled that the Government may not be estopped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government. We have left the issue open in the past, and do so again today. Though the arguments the Government advances for the rule are substantial, we are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government. But however, heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.

*Hechler v. Community Health Services of Crawford County, Inc., supra*, —— U.S. at ——, 104 S.Ct. at 2224, 81 L.Ed.2d at 52–53 (footnotes and citations omitted). For the traditional elements of an estoppel against the Government, *see Pratte v. National Labor Relations Board, supra*, 683 F.2d at 1041. *See generally Portmann v. United States, supra*, 674 F.2d at 1167; *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942, 950–51 (9th Cir.1981). Thus, this Court again believes, with regard to the second issue of equitable estoppel, that further factual and legal development is essential to a full, fair, and equitable resolution of this matter.

Finally, this Court must express its concern over what maybe a pattern of affirmative misconduct on the part of FmHA employees. At least seven cases have been filed with this Court, within the last few years, that have alleged misrepresentation of authority by FmHA personnel. *See Liberty National Bank v. United States*, 7 Cl.Ct. 670, (1985); *Bank of Advance v. United States*, 6 Cl.Ct. 535 (1984); *Hamilton Bank v. United States*, 6 Cl.Ct. 267 (1984); *Southern States Henry Co-Operative, Inc. v. United States*, 4 Cl.Ct. 370 (1984); *Barretville Bank & Trust Co. v. United States*, 2 Cl.Ct. 168 (1983); *National Bank of South Carolina v. United States*, 1 Cl.Ct. 33, 553 F.Supp. 1064 (1982). *See also Dahl v. United States*, 695 F.2d 1373 (Fed.Cir.1982). As a result, this Court is very concerned over what appears to be a growing FmHA policy to intentionally induce private financial institutions to extend interim loans, based upon representations from supervisory FmHA officials, with the full knowledge that these same officials lack the requisite authority to bind the Government. While the United States Supreme Court's decision in *Federal Crop Insurance Corp. v. Merrill, supra*, 332 U.S. at 387–88, 68 S.Ct. at 5, 92 L.Ed. 17, is factually distinguishable from the instant case, it is appropriate, at this juncture, to quote from Justice Jackson's dissent, in which he stated that "[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street."

In any event, all that is decided today is that this Court needs further factual and legal illumination before this Court is prepared to decide the issues set out herein.

## CONCLUSION

For the reasons discussed herein, both parties' motions for summary judgment are denied. The parties have 30 days from the date of this decision to advise the Court of their intentions for further proceedings herein.