**LIBERTY NATIONAL BANK**

v.

**The UNITED STATES.**

No. 283–83C.

United States Claims Court.

March 29, 1985.

James E. Templeman, Lovington, N.M., attorney of record for plaintiff.

R. Anthony McCann, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This case comes before the Court in a suit for breach of contract by the Farmers Home Administration (FmHA). The plaintiff seeks recovery of amounts extended in the form of an interim loan to a farmer, pending the closing of his previously approved FmHA loan. The Government, however, after approving the loan terms, cancelled the loan before disbursing the loan proceeds to the farmer and denied liability for the plaintiff's extension of an interim loan. It is undisputed that the plaintiff relied upon the written representations of the FmHA County Supervisor, contained in a letter to the bank, to the effect that the loan had been formally approved and that, if the bank extended an interim loan to the farmer, the FmHA would reimburse the bank when the loan was closed. The defendant moved for summary judgment, and the plaintiff filed a brief in opposition to such motion. For the reasons set forth below, the defendant's motion for summary judgment is denied.

## Facts

In May of 1980, Liberty National Bank, Lovington, New Mexico, refused to extend any further credit to a local farming couple, Mr. Tommy Skurlock and his wife, since the Skurlocks had reached their credit limit with the bank. As a result, Mr. Skurlock applied to the FmHA for an Economic Emergency Loan. 7 C.F.R. §§ 1980.501 *et seq.* (1980).

The FmHA is a Federal Government agency that is authorized to provide a supplemental source of credit to farmers and rural residents, when the farmers are otherwise unable to obtain credit from normal commercial institutions. 7 U.S.C. §§ 1922 *et seq.* (Supp. IV 1980); 42 U.S.C. §§ 1471 *et seq.* (Supp. IV 1980). On May 15, 1980, the FmHA County Supervisor, Mr. Robert M. Whyel, notified the plaintiff, in writing, that the FmHA had approved a loan for the Skurlocks in the amount of $75,000 and requested that "[i]f your bank is able to make him an immediate advance, not to exceed the $50,000, we will reimburse the bank when the loan is closed."[1] In reliance on such representation, the plaintiff extended a loan to Mr. Skurlock in the amount of $35,000, showing as its security an "F.H.A. Ltr. Gty."

On August 1, 1980, Mr. Whyel again wrote the plaintiff to inform it that the FmHA would not close the Skurlocks' loan until they satisfied all of the FmHA's loan requirements. Those loan requirements required the Skurlocks to have given liens on their real estate, crops, and farm equipment. The Skurlocks, however, refused to voluntarily place a lien on their real estate. On August 22, 1980, Mr. Whyel advised the plaintiff that the FmHA could not reimburse the plaintiff for the interim loan to the Skurlocks, since the Government had decided not to close the Economic Emergency Loan with them. The letter further indicated that the Skurlocks had failed to satisfy all of the Government's loan requirements and had filed for bankruptcy, thus preventing the Government from closing the loan. Subsequently, Mr. Skurlock was discharged in bankruptcy from liability for payment of the interim loan to the bank, which had a remaining balance of $21,030.69.

The plaintiff filed its complaint in this Court on May 3, 1983, alleging that Mr. Whyel's letter of May 15, 1980, written on behalf of the FmHA, constituted a guarantee contract with the bank. The defendant has now moved for summary judgment, and the plaintiff has responded with a brief in opposition.

## Discussion

■ There appear to be two distinct issues that must be considered by this Court in ruling on the defendant's motion. First, whether the FmHA County Supervisor possesses the actual authority to enter into an interim loan guarantee contract with the bank and, if he did, whether such a contract was created by his letter of May 15, 1980. Second, even if the County Supervisor did not possess the requisite actual authority, whether the Government should be equitably estopped from asserting the defense of lack of authority under the facts stated herein.

In *Prestex, Inc. v. United States,* 3 Cl.Ct. 373, 377 (1983), this Court recognized that:

It is a well recognized rule that "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). *See also Lin v. United States,* 3 Cl.Ct. 213, 216 (1983); *Delaly v. United States,* 3 Cl.Ct. 203, 206 (1983). *Housing*

---

1. In its motion for summary judgment, the Government argues that "[t]he representation that the county supervisor made to the Liberty National Bank if it made an interim loan to Tommy Skurlock was made subject to the condition precedent that the loan would be closed."

The plain language of Mr. Whyel's letter, however, indicates that the FmHA had *already* formally approved Mr. Skurlock's FmHA loan. Thus, no such condition precedent appears evident. In any event, this would appear to be another matter for further factual development.

*Corp. of America v. United States,* 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972). The government is not bound by acts of its agents beyond the bounds of that agent's actual authority. *Federal Crop Ins. Corp. v. Merrill, supra. See also C.P. Squire Contractors v. United States,* 716 F.2d 865, 868 (Fed.Cir.1983); *City of Klawock v. United States,* 2 Cl.Ct. 580, 586 (1983), [*aff'd,* 732 F.2d 168 (Fed.Cir.1984) ].

The County Supervisor is an employee of the county office of the FmHA and, as such, is granted authority only "in accordance with applicable laws, and the regulations implementing these laws." 7 C.F.R. § 1900.3 (1980). In addition, the County Supervisor has been given loan approval authority "consistent with the program requirements and available resources." 7 C.F.R. § 1901.2 (1980). The FmHA's regulations do allow, under certain limited circumstances, for the repayment of interim commercial financing when certain loans are closed. *See* 7 C.F.R. § 1942.17(n)(2) (1980) (Community Facility Loans); 7 C.F.R. § 1944.175(a) (1980) (Farm Labor Housing Loan). Further, the FmHA regulations also authorize Government guarantees of certain types of commercial loans. *See* 7 C.F.R. §§ 1980.501 *et seq.* (1980) (Economic Emergency Loans can be made through a Government guaranteed line of credit with a commercial lender). Here, however, neither party has cited any law or regulation which conclusively establishes whether the FmHA County Supervisor had the actual authority to enter into the alleged interim guarantee contract with the plaintiff pertaining to Economic Emergency Loans. *See* 7 C.F.R. §§ 1980.501 *et seq.* (1980). This Court has also been unable to locate any express provision which is determinative of this question.[2] Therefore, this Court believes that further factual and legal development of this question is essential to a full, fair, and equitable resolution

of this matter. *Accord Bank of Advance v. United States,* 6 Cl.Ct. 535, 538 (1984). *Cf. Hamilton Bank v. United States,* 6 Cl.Ct. 267, 270 (1984).

Moreover, even if it is determined that the FmHA County Supervisor did not have the actual authority to contract with the plaintiff in this case, it is possible that this Court could find, after a thorough airing of the facts in this case, that the Government should be equitably estopped to deny its lack of authority. Such a determination depends upon whether the Government's actions constitute "affirmative misconduct." *Portmann v. United States,* 674 F.2d 1155, 1164–65 (7th Cir.1982). *See Pratte v. National Labor Relations Board,* 683 F.2d 1038, 1041–42 (7th Cir. 1982); *United States v. Lazy FC Ranch,* 481 F.2d 985, 988–89 (9th Cir.1973). *See also Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2218, 2228, 81 L.Ed.2d 42, 57 (1984); *United States Immigration and Naturalization Service v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7, 10 (1973); *Broad Avenue Laundry and Tailoring v. United States,* 231 Ct.Cl. 1, 5, 681 F.2d 746, 748 (1982). As recently as May 21, 1984, the United States Supreme Court stated that:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well-settled that the Government may not be estopped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government. We have left the issue open in the past, and do so again today. Though the arguments the Government advances for the rule are substantial, we are hesitant,

**2.** While 7 C.F.R. § 1941.23(b)(1) (1980) specifically provides that, with regard to FmHA Operating Loans, FmHA employees will not guarantee repayment of interim advances from other credit sources, this section does not apply to

FmHA Economic Emergency Loans, 7 C.F.R. §§ 1980.501 *et seq.* (1980), which are at issue herein. *See Bank of Advance v. United States, supra,* 6 Cl.Ct. at 538.

when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government. But however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.

*Hechler v. Community Health Services of Crawford County, Inc., supra,* —— U.S. at ——, 104 S.Ct. at 2224, 81 L.Ed.2d at 52–53 (footnotes and citations omitted). For the traditional elements of an estoppel against the Government, *see Pratte v. National Labor Relations Board, supra,* 683 F.2d at 1041. *See generally Portmann v. United States, supra,* 674 F.2d at 1167; *TRW, Inc. v. Federal Trade Commission,* 647 F.2d 942, 950–51 (9th Cir.1981). Thus, this Court again believes, with regard to the second issue of equitable estoppel, that further factual and legal development is essential to a full, fair, and equitable resolution of this matter.

Finally, this Court must express its concern over what maybe a pattern of affirmative misconduct on the part of FmHA employees. At least seven cases have been filed with this Court, within the last few years, that have alleged misrepresentation of authority by FmHA personnel. *See People's Bank & Trust Co. v. United States,* No. 283–83C (Cl.Ct. March 29, 1985); *Bank of Advance v. United States,* 6 Cl.Ct. 535 (1984); *Hamilton Bank v. United States,* 6 Cl.Ct. 267 (1984); *Southern States Henry Co-Operative, Inc. v. United States,* 4 Cl.Ct. 370 (1984); *Barretville Bank & Trust Co. v. United States,* 2 Cl.Ct. 168 (1983); *National Bank of South Carolina v. United States,* 1 Cl.Ct. 33, 553 F.Supp. 1064 (1982). *See also Dahl v. United States,* 695 F.2d 1373 (Fed.Cir.1982). As a result, this Court is very concerned over what appears to be a growing FmHA poli-cy to intentionally induce private financial institutions to extend interim loans, based upon representations from supervisory FmHA officials, with the full knowledge that these same officials lack the requisite authority to bind the Government. While the United States Supreme Court's decision in *Federal Crop Insurance Corp. v. Merrill, supra,* 332 U.S. at 387–88, 68 S.Ct. at 5, 92 L.Ed. at 17, is factually distinguishable from the instant case, it is appropriate, at this juncture, to quote from Justice Jackson's dissent, in which he stated that "[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street."

In any event, all that is decided today is that this Court needs further factual and legal illumination before this Court is prepared to decide the issues set out herein.

## CONCLUSION

For the reasons discussed herein, the defendant's motion for summary judgment is denied. The parties have 30 days from the date of this decision to advise the Court of their intentions for further proceedings herein.