**BANK OF ADVANCE**

v.

**The UNITED STATES.**

**No. 160–83C.**

United States Claims Court.

April 19, 1985.

John L. Cook, Cape Girardeau, Missouri, for plaintiff.

Sara V. Greenberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Donald R. Kronenberger, Jr., Office of Gen. Counsel, U.S. Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

The Bank of Advance brought this action to recover principal and interest due on a promissory note guaranteed by agents of the Farmers Home Administration

[FmHA]. The facts appear at length in the Court's opinion denying the parties' cross motions for summary judgment, *Bank of Advance v. United States*, 6 Cl.Ct. 535 (1984). In brief, the FmHA County Supervisor's assistant wrote to the Bank on June 18, 1981 asking it to advance $36,000 to a farmer and promising: "Farmers Home Administration will pay this advance in full, including interest, when Mr. Moore's Emergency Loan is closed." The Bank advanced the money, the farmer defaulted, and the FmHA refused to honor the guarantee. The plaintiff now claims $33,636.16, comprising $16,523 of unpaid principal and $17,113.16 of accrued interest.

The motions for summary judgment left one issue unresolved: whether the FmHA agents could oblige the Government to pay the note. The plaintiff asserts 1) that the agents had actual authority to guarantee the note; and 2) that their actions estop the Government from denying their authority because they deliberately misled the Bank. On April 16, 1985 a trial was held at which the parties presented exhibits and testimony to the Court. After considering that evidence and reviewing the entire record, the Court concludes that the plaintiff cannot recover.

## DISCUSSION

### 1. *Actual Authority*

■ County Supervisors have authority to execute formal Loan Note Guarantees. *See* 7 C.F.R. §§ 1901.3(b), 1980.83 (Appendix A) (1981). An FmHA employee testified that the agency can subordinate its liens to private lenders that advance money to farmers before their government loans close. *See id.* at § 1900.2(k). Therefore, the plaintiff argues, under certain circumstances FmHA agents do have actual authority to guarantee the kind of interim financing that the plaintiff advanced.

In this case the agents neither executed a Loan Note Guarantee nor subordinated an FmHA lien to the Bank, but—according to the plaintiff—these steps are mere formalities. To guarantee interim financing was within the County Supervisor's subject matter jurisdiction. His assistant made a mistake when he attempted to exercise that jurisdiction. But the plaintiff contends that the Government cannot evade a commitment made by an authorized agent who misunderstood the law. To support this proposition the plaintiff cites *Broad Avenue Laundry and Tailoring v. United States*, 231 Ct.Cl. 1, 6, 681 F.2d 746, 748–49 (1982) (By mistake, Contracting Officer authorized contractor to pay higher wages than Labor Department regulation required. She acted "with requisite formality." Government was estopped to deny her authority.).

The plaintiff's argument assumes that an FmHA supervisor has general authority to guarantee loans, as a contracting officer has general authority to oversee contracts. This premise is false. Every day a contracting officer must solve problems unforeseen by any regulation, and the contractor risks default if he disobeys the contracting officer's orders—even orders that arise from a mistake of law. *See id.*

But detailed regulations define the FmHA supervisor's duties. Acting within the regulations, he can obligate public funds. If he acts outside the regulations he does not merely err, he loses his power. Furthermore, a county supervisor cannot compel a bank to lend money. The bank follows his advice at its own risk.

### 2. *Estoppel*

The plaintiff's president testified that over the last fifteen years county supervisors had written him about thirty guarantee letters like the one at issue in this case. The FmHA never failed to honor those letters, until it found that it had guaranteed the debts of a bad credit risk. The FmHA then sidestepped the loss that the plaintiff now bears. The plaintiff asserts that it justifiably relied upon the county supervisors' course of conduct when it advanced the money it seeks to recover. Therefore, even if the supervisors lacked authority, the Government should be estopped from disavowing their actions. *See,*

*e.g., Portmann v. United States*, 674 F.2d 1155 (7th Cir.1982).

■ The regulations, however, give county supervisors no authority to guarantee advances informally. The plaintiff could not justifiably rely upon such unauthorized promises. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *accord Heckler v. Community Health Services*, — U.S. ——, 104 S.Ct. 2218, 2225–26, 81 L.Ed.2d 42 (1984). A bank cannot claim ignorance of federal regulations. *See, e.g., American Bank of San Antonio v. United States*, 224 Ct.Cl. 482, 489, 633 F.2d 543, 546 (1980).

■ But even if the plaintiff reasonably relied on the county supervisors' promises, this Court cannot estop the Government from showing that its agents lacked authority to guarantee the advance. *See, e.g., Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1153–54 (Fed.Cir. 1983) (citing cases from the U.S. Supreme Court and U.S. Court of Claims).

## CONCLUSION

This plaintiff and others similarly situated may have grievances that should be redressed. *See, e.g., Liberty National Bank v. United States*, 7 Cl.Ct. 670 (1985); *see also* 28 U.S.C. § 2509 (congressional reference cases). But the plaintiff has no legal claim against the United States. The Clerk will dismiss the complaint and enter judgment for the defendant.