The MONTEFIORE HOSPITAL
ASSOCIATION OF WESTERN
PENNSYLVANIA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 129–82C.

United States Claims Court.

July 5, 1984.

Bella A. Karlowitz, Pittsburgh, Pa., for plaintiff. William H. Hoffman, Pittsburgh, Pa., of counsel.

Lorraine B. Holloway, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant. Robin M. Lee, Dept. of Health and Human Services, Washington, D.C., of counsel.

## OPINION

TIDWELL, Judge:

Plaintiff, the Montefiore Hospital Association of Western Pennsylvania, brought this suit to recover damages of $208,319 and reformation of certain bonds and related documents associated with a Direct Loan Bond Purchase Agreement entered into on November 16, 1976 with the Department of Health, Education and Welfare (HEW).[1] The reformation sought is the reduction or elimination of the interest differential factor used to calculate the loan's interest rate. Plaintiff alleges that the imposition of the interest differential factor violates section 291j–7(a)(1) of Title 42 of the United States Code known as the Public Health Service Act of 1946 (the Hill-Burton program) as amended by the Medical Facilities Construction and Modernization Amendments of 1970. 42 U.S.C. 291j–7(a)(1). Plaintiff alleges that defendant agreed to change the loan's interest rate if plaintiff could show that the rate was improper. Defendant filed a Motion for Summary Judgment on the grounds that plaintiff failed to state a claim upon which relief can be granted and that defendant is entitled to judgment as a matter of law. Jurisdiction is proper under 28 U.S.C. 1491.

## BACKGROUND FACTS

Plaintiff is a non-profit entity incorporated under the laws of the state of Pennsylvania engaged in hospital management. Plaintiff's claim arises out of its hospital finance activities pursuant to the Hill-Burton program and its progeny. See Public Health Service Act of 1946, Pub.L. 79–729. From its inception in 1946, the purpose of the Hill-Burton program has been to provide grants to the States for the construction and modernization of hospitals and other health facilities. Hill-Burton also provides for a program of federal loan guarantees with interest subsidies for the construction and modernization of non-profit private health facilities. The guaranteed loan program typically provides for disbursement of funds by non-governmental lenders to non-profit private agencies. Defendant, in turn, guarantees payment to the lender as each disbursement is made.

The Medical Facilities Construction and Modernization Amendments of 1970, Pub.L. 91–296, expanded the Hill-Burton program by creating a loan program of direct Federal loans for the construction and modernization of publicly-owned health facilities. The 1970 revision allowed, for the first time, funds from HEW loans to be disbursed directly to the borrower prior to the beginning of construction.[2] As a result of an examination of the construction fi-

---

1. HEW is now the Department of Health and Human Services, however, for the sake of simplicity, we will refer to the lender as HEW throughout this opinion.

2. Previously, direct loans were based on bond financing and the entire loan was available to the borrower prior to construction.

nancing industry HEW found substantial differences in financing practices with regard to guaranteed loans and direct loans. Private non-profit agencies typically found lenders willing to make advances during the construction period as those advances were required to reimburse contractors for work completed. Interest was payable to the lender for each advance beginning on the date the advance was made. Public non-federal agencies, on the other hand, financed their construction through the use of bond issues, which, of necessity, provided those agencies with total financing for their project prior to the beginning of construction. The money could then be invested in relatively safe, short-term securities, which could be liquidated as necessary to reimburse contractors.

HEW determined that if it charged public and private agencies the same interest rate on loans, then the public agency, given the nature of its construction financing, would have an advantage in that the public agency could earn interest on unused principal during the construction period, while the private agency could not. This was viewed as being inconsistent with 42 U.S.C. 291j–7(a)(1), which requires comparability between interest rates on direct and guaranteed loans.

Accordingly, on August 16, 1972, HEW directed its regional offices to factor into the overall bond interest rate the amount of interest which the public agency could reasonably be expected to earn on the unused principal. The propriety of this interest differential factor is the subject of this case.

## FACTUAL AND PROCEDURE HISTORY

In November of 1976, plaintiff contracted with the Allegheny County Hospital Development Authority (Allegheny) to issue two series of bonds on plaintiff's behalf in order to finance hospital construction and other improvements.

The bonds issued by Allegheny on behalf of Montefiore consisted of the following: (i) 1976 Series I bonds in the total amount of $29,055,000; and (ii) 1976 Series I–HEW bonds in the total amount of $8,475,000. The Series I bonds carried an average interest cost to Allegheny and plaintiff of between 7.3% and 7.4% per annum and were sold to the public. The Series I–HEW bonds were sold to HEW and carried a subsidized interest rate of 6.19% per annum.[3]

In attempting to set the subsidized interest rate on direct loans at a comparable basis to the interest rate paid on guaranteed loans, HEW, at the time of the direct loan to plaintiff, utilized the following procedure to calculate the interest rate on direct loans:

(i) HEW subtracted 3% from the FNMA rate as released every two weeks; and

(ii) then adjusted the rate so obtained by adding an interest differential factor which HEW maintained at the time was necessary to equalize the cost of the direct loan with the cost of a guaranteed loan.

Prior to closing on the Series I–HEW Bonds, HEW indicated to plaintiff that the interest differential factor recently had been and probably would be on this project approximately .2% or .25% per annum. However, on November 2, 1976, about two weeks before the closing, HEW advised plaintiff that the interest differential factor instead would be .52% per annum.

On November 16, 1976, plaintiff and HEW met for a pre-closing conference and allegedly agreed that plaintiff would have the right to have the imposition of such interest differential factor reconsidered, and HEW would lower or eliminate the rate if it were shown that the .52% factor was incorrect, inappropriate or improper. Immediately thereafter, the parties signed a Direct Loan Bond Purchase Agreement setting the interest rate on the bonds at

---

**3.** Under the applicable statutory and regulatory provisions governing guaranteed loans, HEW typically subsidizes a loan by reimbursing a hospital-borrower for 3% of its interest costs on borrowings from a conventional lender.

6.19%, which rate included a .52% interest differential factor.

After executing the necessary documents and the Bond Purchase Agreement, plaintiff again met with several representatives of defendant. As a result thereof, plaintiff alleges that defendant's representatives again assured plaintiff that they would review the appropriateness of the interest differential factor, and, if it was inappropriate, it would be changed.

Following the closing, plaintiff complained on several occasions to HEW that the interest differential factor was too high or improper all together. Based, at least in part, on plaintiff's assertions HEW began a review of its interest differential policy. On July 19, 1979, HEW discontinued its policy of charging an interest differential factor on direct loans. The elimination of the interest differential factor, however, was made prospective only and, therefore, did not apply to plaintiff's direct loan. Plaintiff nevertheless kept up its campaign to have the interest differential factor on its direct loan either reduced or eliminated.

In August of 1981, plaintiff made one further request of HEW that it reconsider its position. Defendant again rejected the request on the basis that the interest differential factor was a contractual obligation which the defendant had no authority to waive or alter. On March 11, 1982, plaintiff filed suit in the United States Court of Claims and this case is now before this court on Defendant's Motion for Summary Judgment.

### DISCUSSION

Defendant seeks summary judgment and an order dismissing plaintiff's complaint. However, it is a well-established rule that summary judgment should not be granted if there is a genuine issue of material fact. *South Louisiana Grain Service, Inc. v. United States,* 1 Cl.Ct. 281, 289 (1982); *Niagara Mohawk Power Corp. v. United States,* 207 Ct.Cl. 576, 525 F.2d 1380 (1975).

In support of its motion, defendant argues that because the written loan agreement is not in dispute, this court, as a

matter of law, can rule on defendant's motion based on the terms of the document itself. The document clearly shows the interest rate to be 6.19%. Defendant contends that this court in reaching its decision cannot consider the following: (1) plaintiff's alleged pre-closing agreement to vary the terms of the Direct Loan Bond Purchase Agreement because it is barred by the parol evidence rule and because the government representatives lacked the requisite authority to agree to make changes in the interest differential factor; (2) reformation of the Direct Loan Bond Purchase Agreement because plaintiff failed to allege "the requisite mechanical error necessary to reform a contract"; and (3) plaintiff's alleged post-closing agreement because plaintiff has failed to allege sufficient facts to show that it was made with proper consideration and the necessary authority.

After a careful review of the pleadings and evidence that comprise the record, this court holds that summary judgment is not appropriate on counts one and two of Defendant's Motion to Dismiss because of the existence of factual discrepancies. Accordingly, Defendant's Motion for Summary Judgment is denied in part on the issues of integration, the pre-closing agreement, authority and reformation. However, we find no genuine material issue of fact as to the post-closing discussions. Therefore, as a matter of law, we grant in part Defendant's Motion for Summary Judgment on the issue of lack of consideration for the post-closing agreement. The following discussion sets out the basis for our holding.

### I.

■ The Parol evidence rule, which is a substantive rather than a procedural rule of law, provides that "a binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them" and precludes the admission of prior or contemporaneous evidence to vary the terms of a final written agreement. Restatement (Second) of Contracts § 213 (1979). Plaintiff argues that the parol evi-

dence rule will not exclude from consideration evidence of pre-closing agreements because both parties were mutually mistaken as to the correctness of the interest differential factor. However, the court must consider a threshold question before reaching this issue. The court must determine whether the Direct Loan Bond Purchase Agreement was intended to be the party's exclusive and final expression of their agreement, *i.e.*, an integrated document.

▮▮▮ Defendant would have the court look only to the written document itself to determine whether or not the loan agreement was intended to be an integrated document. Plaintiff, in contrast, would have the court look to the discussions and circumstances surrounding the execution of the agreement. The court agrees with plaintiff and holds that the written loan agreement is not conclusive proof that the parties intended the document to be their final integrated agreement since plaintiff has alleged otherwise. *Sylvania Electric Products, Inc. v. United States,* 198 Ct.Cl. 106, 128, 458 F.2d 994 (1972); 3 Corbin, Contracts § 582 (1960). This is not to say that a writing itself is never conclusive proof of integration. Rather, integration, as a bar to the admission of parol evidence, can be established only by a determination of the intention of the parties as expressed by the writing itself, the circumstances surrounding its execution, and any evidence of prior or contemporaneous negotiations. *David Nassif Associates v. United States,* 214 Ct.Cl. 407, 420, 557 F.2d 249, 256 (1977).

Plaintiff has alleged that, prior to executing the agreement, the parties agreed that the interest differential factor would be reconsidered and that defendant would lower or eliminate the rate if it was shown to be incorrect, inappropriate or improper. Plaintiff has submitted affidavits supporting this allegation. Defendant, on the other hand, denies the existence of any agreements other than the Direct Loan Bond Purchase Agreement. The court finds this sufficient to put into controversy whether or not the parties intended the loan agreement to be a final integrated document. Therefore, the court concludes that the intent of the parties in this instance is a material issue of fact which must be found at trial.

Defendant also argues that even if the government representatives were present at the pre-closing conference and agreed to change the interest differential factor, and such parol agreements are not precluded as a matter of law by the parol evidence rule, that defendant is not bound thereby because the government representatives lacked actual authority to agree to review and change the factor if it was found to be improper. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Defendant claims that only the Director of the Office of Administrative Management of the Public Health Service was authorized to make changes in the interest factor. Since the Director was not in attendance at the conference, the pre-closing agreement was not properly authorized.

However, plaintiff has alleged that defendant's representatives present at the meeting were authorized to make changes in the interest differential factor. In support thereof, plaintiff submitted by affidavit a copy of a memorandum from the Assistant Surgeon General which appears to subdelegate to John Morrison (one of defendant's representatives allegedly present at the pre-closing conference) "the authority to act for the Secretary of HEW in all matters related to the project approval and the Direct Loan Endorsement for Project No. PA–458, Montefiore Hospital, Allegheny County, Pennsylvania."

Pursuant to the provisions of RUSCC 56, we find that plaintiff has set forth sufficient facts, specific in nature, which put in controversy the issue of whether government representatives present at the pre-closing conference had authority to agree to change the factor. This issue requires further development and, therefore, is a proper issue for trial.

Defendant next argues that plaintiff's prayer for reformation of the written loan

agreement must fail because plaintiff has failed to allege "the requisite mechanical error necessary to reform a contract." However, the function of reformation as a remedy for mistake is to make the writing express the agreement as the parties intended and not just to correct unintended mechanical errors. Mere failure to recite an "arithmetical", "computational" or "clerical" error does not preclude reformation. *Highway Products, Inc. v. United States*, 208 Ct.Cl. 926, 946, 530 F.2d 911, 922 (1976); *Burnett Electronics Lab, Inc. v. United States*, 202 Ct.Cl. 463, 479 F.2d 1329 (1973); *Wender Presses, Inc. v. United States*, 170 Ct.Cl. 483, 343 F.2d 961 (1965). *But see Dale Ingram, Inc. v. United States*, 201 Ct.Cl. 56, 475 F.2d 1177 (1973). We have already reached the conclusion that plaintiff has alleged, and supported by affidavit, sufficient facts contested by defendant, which place in controversy the issue of whether or not the writing expressed the intended agreement. With that in mind, the court declines to rule on the reformation issue until after a decision is reached on whether the agreement was integrated. To do otherwise would be premature.

In summary, the Parol evidence rule does not preclude the court from hearing evidence on whether or not the parties intended the agreement to be an integrated document expressing the full and final intentions of the parties. Accordingly, whether or not the written loan agreement memorialized the parties' agreement continues to be a disputed issue of material fact. Additionally, it is possible that plaintiff can prove, as it alleges, that the loan agreement was not integrated and that the parties entered into a pre-closing parol agreement and that defendant has breached that agreement. Hence, summary judgment on these issues would be inappropriate at this time.

## II.

■ We now turn to the post-closing discussions. To vary the contract, any post-closing agreement based on oral repre-

sentations must be supported by consideration. It is well settled that "where the provisions of a contract are changed by a subsequent agreement between the same parties, such agreement has no force and effect unless there is some consideration moving to the party adversely affected by such changes." *Vulcanite Portland Cement Co. v. United States*, 74 Ct.Cl. 692, 705 (1932). Consideration, in the context of a government contract, must render a benefit to the government, and not merely a detriment to the contractor. Furthermore, government officials are without authority to make a contract for which the government receives no benefit or consideration. *Vulcanite Portland Cement Co. v. United States*, 74 Ct.Cl. 692, 705 (1932); *see also Willard V. Sutherland & Co. v. United States*, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086 (1923). Plaintiff alleges that after the parties executed the contract that defendant's representatives agreed to retroactively lower or eliminate the interest differential factor if its implementation was improper, incorrect or inappropriate. Defendant denies that such an agreement was made either at the closing or at any time thereafter.

■ However, even assuming that defendant did agree to vary the contract after the closing, for purposes of summary judgment, this court finds nothing in the pleadings and submissions which demonstrates that the post-closing agreement provided any benefit to the government. Therefore, the agreement was without consideration and defendant's agents were without authority to enter into such agreement. *See Bausch & Lomb Optical Co. v. United States*, 78 Ct.Cl. 584, *cert. denied* 292 U.S. 645, 54 S.Ct. 779, 78 L.Ed. 1496 (1934).

Accordingly, this court holds that even if the parties entered into an agreement to modify the interest differential factor after the Direct Loan Bond Purchase Agreement was executed on November 16, 1976, there was no consideration given, and, as a matter of law, such post-closing agreement is invalid.

## CONCLUSION

THEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment is denied in part on counts one and two relating to the issues of integration, the pre-closing agreement, authority and reformation. Summary judgment is granted in part on count three of defendant's motion on the issue of lack of consideration on the post-closing agreement and plaintiff is not entitled to recover thereunder.