METZGER, SHADYAC & SCHWARZ, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 512–85C.

United States Claims Court.

July 20, 1987.

Brian W. Shaughnessy, Washington, D.C., for plaintiffs; Steven A. Silberberg, of counsel.

David B. Stinson, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

### INTRODUCTION

Plaintiffs are members of the law firm Metzger, Shadyac & Schwarz ("Metzger"). They instituted action in this court pursuant to 28 U.S.C. § 1491 (1982) for an alleged breach of contract by defendant. Plaintiffs seek to recover damages in the amount of $46,562.42 owed to them as attorney fees by a non-party, Environment Consultants Inc. (ECI). The case is pres-

ently before the court on the parties' cross-motions for summary judgment. Two issues are presented for consideration. The first is whether an express contract existed between Metzger and the Fish and Wildlife Service of the Department of Interior ("DOI"). The second issue is whether the law firm was a third-party beneficiary to a contract between DOI and ECI. For the reasons set forth below, summary judgment is granted in favor of the defendant.

## FACTUAL BACKGROUND

On July 21, 1978, Yan Ross, a partner in Metzger, entered into an agreement with Paul de Cervantes, Vice President of ECI, pursuant to which Metzger would represent ECI in a claim against DOI for an equitable adjustment on a contract. Metzger was successful and the DOI Board of Contract Appeals on June 29, 1979 awarded ECI $70,000.00, plus interest. Richard Mundinger, Chief of the Contracting and General Services Branch of the Fish and Wildlife Service, was responsible for initiating the documents necessary for payment of the award.

Metzger had previously been authorized by a document dated August 3, 1978, executed by de Cervantes, to act as collection agent in the event of an award. After the award, however, ECI's Chairman of the Board, Charles Christopher, denied the validity of the authorization document. In his July 26, 1979 letter to Mundinger, Christopher stated that any arrangement made by de Cervantes was not authorized and was nullified when de Cervantes' employment with ECI was terminated on April 23, 1979. He further requested that the settlement award be sent directly to ECI corporate headquarters in Dallas, Texas.

Although the precise date is unclear, Mundinger was made aware, apparently some time between June 29, 1979 and July 26, 1979 that Metzger also made a claim to the proceeds in order to receive payment for its services. On August 9, 1979 DOI's Office of Solicitor wrote Metzger that in view of the competing demands on the award proceeds, the matter would be re-ferred to the Department of Justice for the filing of an interpleader action. On that same day or the day before, Mundinger also told Ross and representatives of ECI of the decision to refer the matter for the filing of an interpleader. On July 31, 1979, the new president of ECI, Jack Donaldson, wrote Mundinger that any further correspondence should be directed to him.

On August 29, 1979, Donaldson called Mundinger. According to Mundinger's notes written on a "Telephone Conversation Record" form that same day, he was told by Donaldson that "they," presumably Metzger and ECI, "had decided to let us send the check ... to [Metzger] made payable to ECI." Donaldson sent a letter to Mundinger the same day confirming that arrangement. It stated that ECI and Metzger "authorized" payment in that way. On September 19, 1979, Mundinger wrote Donaldson that the signed agreement settling ECI's claim against DOI was being sent to DOI's finance office in Denver with instructions to issue a settlement check payable to ECI but delivered to Metzger.

The Denver office mistakenly sent the check to Donaldson at ECI rather than to Metzger. DOI's subsequent attempts to stop payment on it were unsuccessful. On May 21, 1980 Mundinger informed Metzger by letter that the check had cleared ECI's account and that an attempt to stop payment had been unsuccessful. Metzger was also informed that Mundinger no longer was involved with the case and that Deputy Associate Solicitor, Tim Elliott, would handle it for DOI in the future. On June 30, 1980, Elliott notified Metzger that ECI had been unresponsive to a demand for repayment of the settlement money and that DOI did not intend to take any further action in the case.

## PLEADINGS

Plaintiff law firm and individuals of that firm initially sought relief in the United States District Court for the District of Columbia pursuant to the Federal Tort Claims Act. That suit was dismissed by the district court and the dismissal was affirmed on May 14, 1985. Following the

dismissal, plaintiff filed its complaint here. On December 5, 1985 defendant moved to dismiss for lack of jurisdiction pursuant to RUSCC 12(b)(1). By order filed June 12, 1986, defendant's motion to dismiss was denied. Metzger then filed a motion for summary judgment to which defendant responded by filing a cross-motion for summary judgment.

## DISCUSSION

Metzger's entitlement to recovery rests on two separate legal theories. First, it argues that there was an express contract between Metzger and DOI. In the event that no express contract is found, Metzger alleges that it is entitled to recover as a third party beneficiary to an asserted contract between ECI and DOI. In order for Metzger to prevail on its motion for summary judgment, the uncontroverted facts must establish that an express contract existed either between it and DOI, or that a contract existed between ECI and DOI, as to which Metzger was an intended third party beneficiary.

### A. The Express Contract Claim

The requisite elements of an express oral contract include a definite offer, an unconditional acceptance, valid consideration and mutuality of intent. *See Fincke v. United States*, 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982); *Estate of Samuel E. Bogley v. United States*, 206 Ct.Cl. 695, 704, 514 F.2d 1027, 1032 (1975); *City of Klawock v. United States*, 2 Cl.Ct. 580, 584 (1983), *aff'd*, 732 F.2d 168 (Fed.Cir.1984).

■ Plaintiff's express contract claim is based on the affidavit of Ross which states that a compromise agreement was reached among Mundinger (DOI), Donaldson (ECI) and Ross (Metzger) after a series of discussions concerning disposition of ECI's settlement award. Since defendant was unwilling to stipulate to the existence of such an agreement, if that assertion is accepted by the court at face value, it would be necessary to resolve the issue at a trial. The court does not accept Ross' statement and the proposed stipulations based on it as fact assertions as opposed to legal conclu-

sions, however, and finds there is not a genuine dispute. Initially the court observes that "mere denials or conclusory statements" do not create a factual dispute. *See Marquardt Co. v. United States*, 822 F.2d 1573 (Fed.Cir.1987). A close examination of Ross' affidavit and the other stipulated facts shows that the assertion of a compromise is an unsupportable conclusion.

At paragraph four of his affidavit Ross states that, on behalf of the firm, he "entered into discussions with DOI regarding the delivery of a check for services rendered to ECI to the firm." There is no reference to specific dates or conversations. There is no question, as Mundinger concedes, that prior to August 29, there were conversations about Metzger's claim. Mundinger specifically states, however, that "I had no contact with [Metzger] on how proceeds were to be distributed and relied solely upon the oral and written authorization given to me by [ECI]." Ross' assertion is consistent with Mundinger's statement, which plaintiff never contradicts, and adds nothing to it. Nor does Ross' declaration that after "a lengthy series of discussions among Mr. Mundinger, Jack S. Donaldson, President of ECI, and myself, a compromise agreement was reached that DOI would make payable to and forward a check in the amount of the award to [Metzger]." While this statement suggests the possibility of direct conversations between DOI on the one hand and ECI or Metzger on the other in which DOI agreed as part of a compromise to pay the check to Metzger, the affidavit is careful to avoid such a claim. A series of conversations "among" three persons is not an assertion of the type of direct contact in which offer and acceptance are conveyed which would be necessary here. Plaintiff makes no assertion of any specific contact between Mundinger and the other two entities which could form the basis of a contract. It is critical to note the nature of the conversation Mundinger had on August 29, as confirmed by his notes and Donaldson's letter. Mundinger was *told* who to send the check to and how to make it out.

Donaldson's letter says Mundinger was "authorized" to send the check to Metzger.

Such terminology is consistent with the existence of an agreement between ECI and Metzger, but not with the idea that defendant was a party to that agreement. The real dispute was between lawyer and client. Mundinger was merely receiving instructions based on resolution of that dispute. In light of Mundinger's uncontradicted statement that he did not participate in any negotiations leading to resolution of who should get the check, the court can only conclude that none took place between Mundinger and Metzger.

Plaintiff has failed to establish all of the elements necessary to the creation of an express contract. It is fundamental that in order to have a valid contract one party must make an offer that is a promise which is conditional upon receipt by the offeror of some act or promise from the offeree, and the offer must be accepted as to all its terms by the offeree. *Estate of Samuel E. Bogley*, 206 Ct.Cl. at 704, 514 F.2d at 1032. The offer and acceptance necessary to support an express contract between Ross and Mundinger simply cannot be derived from the fact that the three parties participated in a series of discussions.

Nor is there any consideration shown. The consideration necessary to support a contract has been defined as "... a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor ..." 1 S. Williston, A Treatise on the Law of Contracts § 102 (3d ed. 1957). Additionally, in the context of government contracts this court has held that consideration must render a benefit to the government, and not merely a detriment to the contractor; government officials do not have authority to make contracts in which no benefit flows to the government. *Vulcanite Portland Cement Co. v. United States*, 74 Ct.Cl. 692, 705 (1932); *Montefiore Hospital Ass'n v. United States*, 5 Cl.Ct. 471, 476 (1984). Plaintiff alleges that the government received a benefit by not filing an interpleader action in the district court and that this benefit constituted the consideration neces-sary to support the contract. The record indicates that the arrangements for the settlement check to be sent directly to Metzger were made as an alternative to the government's initial plan to file an interpleader suit. However, the benefit derived from avoiding the lengthy process of filing and entering an interpleader action accrued to ECI and Metzger, not to the Government. After the money was deposited with the district court, the Government's association with the conflict would have been over. ECI and Metzger on the other hand would have been required to continue to litigate their claims. If a benefit resulted from resolving the conflict surrounding disbursement of settlement funds by agreement rather than by interpleader, it flowed to plaintiff and its client. The Government's interest in disposing of the check to the proper party would have been accomplished by either an interpleader or an agreement between Metzger and ECI.

In sum, the evidence shows that while ECI and Metzger may have entered an agreement for disbursement of the settlement funds, there is no evidence that DOI did anything other than acquiesce in that agreement by mailing the check pursuant to instructions. The evidence simply fails to show the requisite elements of a contractual relationship.

**B. The Third Party Beneficiary Claim**

■ Plaintiff's second theory of recovery is based on its alleged status as a third-party beneficiary to a contract between the Government and ECI. This court does have jurisdiction over suit on a contract by an intended third-party beneficiary of a contract. *Hebah v. United States*, 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970). In order to recover as a third party beneficiary, Metzger must establish the existence of a contract between ECI and DOI and also must show that it was the express or implied intention of those parties to directly benefit Metzger. *See German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *Robo Wash, Inc. v. United States*, 223 Ct.Cl. 693, 697 (1980);

*Orchards v. United States,* 4 Cl.Ct. 601, 609 (1984), *aff'd,* 749 F.2d 1571 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ Here, it is not necessary to go further than point out that Metzger has not put forward any facts necessary to support the finding of a contract between ECI and DOI. For the same reasons as set out in the context of an asserted contract between Metzger and DOI, the uncontroverted facts cannot support a contract between ECI and the Government. Nor does the fact that Mundinger recognized competing claims on the settlement award and contemplated filing an interpleader action establish that Donaldson and Mundinger contracted for disbursement of the settlement funds with the intent to benefit plaintiff.

The facts simply do not permit such an inference in light of Mundinger's undisputed denials. There is no contract; therefore, Metzger cannot recover as a third party beneficiary.

## CONCLUSION

Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. Each party to bear its own costs.