**MILES FARM SUPPLY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 729–86C.

United States Claims Court.

May 24, 1988.

---

Thomas J. Meyer, Owensboro, Ky., for plaintiff.

Eric L. Miller, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, and Mary Mitchelson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case, currently before the court on defendant's motion for summary judgment, presents the question of whether the Farmers Home Administration ("FmHA") breached an implied-in-fact contract with plaintiff Miles Farm Supply, Inc. ("Miles"). After consideration of the parties' submissions, the court concludes for the reasons expressed herein that there are no genuine issues of material fact and that defendant is entitled to summary judgment as a matter of law.

## FACTUAL BACKGROUND

The following facts are not in dispute. On January 25, 1983, Mr. Thomas Roy Henry, a farmer from Webster County, Kentucky, applied to the FmHA for a $72,500.00 operating loan and for a $68,500.00 farm ownership loan.[1] The $72,500 operating loan was closed—i.e., the funds were made available to Mr. Henry—on April 25, 1983. On August 12, 1983, Miles, a supplier of agricultural products in western Kentucky, received $10,946.43 from the operating loan proceeds, apparently as repayment for credit previously extended by Miles to Mr. Henry. The $68,500 farm ownership loan was approved by the FmHA on November 3, 1983. The loan failed to close at this time, however, because FmHA loan funds were exhausted. Although funds subsequently became available, the farm ownership loan could not close because Mr. Henry was hospitalized; apparently, the fact that he could not come to the FmHA offices prevented closing on the farm ownership loan. On or about February 2, 1984, after Mr. Henry had been out of the hospital for an indefinite period of time, he informed Wendell Dennis Howard, the FmHA County Supervisor in Henderson,

Kentucky, that he had sold several crops worth approximately $40,000.00—crops upon which the FmHA held a lien—and used the money to pay debts of his father to the Federal Land Bank.[2] Due to this conversion by Mr. Henry of secured property, the FmHA refused to close the farm ownership loan. The determination not to close the loan was approved by the FmHA Kentucky State Director. Of the $68,500 farm ownership loan, $21,000 had been specifically scheduled by Mr. Henry and the FmHA to be applied to Mr. Henry's pre-1983 debt to Miles.

Plaintiff's amended complaint, filed here on November 28, 1986,[3] alleges:

That during 1983 and subsequent to approval of the above mentioned [$68,500] operating loan, the Defendant by and through its agents and employees, promised, assured and guaranteed the Plaintiff, Miles Farm Supply, Inc., that if the Plaintiff would extend certain farm supply credit to Mr. Henry then said farm supply credit for certain farm supply expenses would be paid for from the proceeds of the subject operating loan and that the Plaintiff would certainly receive full payment on the credit it would be extending to Mr. Henry.

Although the complaint describes the $68,500 loan as an "operating" loan, Miles does not dispute that the $68,500 loan discussed in the complaint, and from which it expected repayment, was in fact a farm ownership loan.[4]

According to the complaint, Mr. and Mrs. Henry filed a Petition in Bankruptcy in the U.S. Bankruptcy Court for the Western District of Kentucky (No. 4–84–00150(D)), which was granted and which discharged all debts owing to Miles.

---

1. The substantive differences between these two types of FmHA loans is discussed below.

2. The Federal Land Bank is not an agency of the U.S. Government.

3. Plaintiff originally filed suit in the U.S. District Court for the Western District of Kentucky. The case was transferred here on November 19, 1986.

4. In its complaint, Miles claims that Mr. Howard's alleged representations as to the $68,500 loan, which never closed, induced it to extend new credit to Mr. Henry. Miles now alleges, however, that it was never informed of the type of loan from which it was going to be paid.

## DISCUSSION

For purposes of deciding the Government's motion, the court will assume as true plaintiff's allegation that Mr. Howard, as an agent of the FmHA, "promised, assured and guaranteed" Miles that if it extended additional credit to Mr. Henry, it would be paid back for this credit[5] from the proceeds of the farm ownership loan. Although this allegation is contested by defendant, and the deposition testimony provided to the court fails to indicate clearly whether such a guarantee was made, plaintiff cannot recover even if its allegation were true.

Miles contends that the FmHA's guarantee to repay it out of the farm ownership loan proceeds created an implied-in-fact contract between Miles and the Government. An implied-in-fact contract cannot exist unless the officer whose conduct is relied upon had actual authority to bind the Government. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Housing Corp. of Am. v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972); *Hanson v. United States*, 13 Cl.Ct. 519, 533 (1987); *Pacific Gas & Elec. Co. v. United States*, 3 Cl.Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984). Accordingly, no contract arose if Mr. Howard did not have actual authority to guarantee repayment of Miles' additional extension of credit out of the $68,500 farm ownership loan. For two independent reasons, the court concludes that Mr. Howard did not have actual authority to bind the Government in the manner alleged by Miles.

First, the regulations relating to farm ownership loans provide that "FmHA employees may not guarantee, personally or for FmHA, repayment of advances made from other credit sources." 7 C.F.R. § 1943.27 (1983).[6] Parties who deal with Government agents are charged with knowledge of the regulations that govern their dealings. *See Federal Crop Ins. Corp.*, 332 U.S. at 384–85, 68 S.Ct. at 3–4; *Loftin v. United States*, 6 Cl.Ct. 596, 609 (1984), *aff'd*, 765 F.2d 1117 (Fed.Cir.1985). Accordingly, taking plaintiff's allegations as true, the FmHA County Supervisor had no authority to guarantee repayment of the additional credit extended by Miles to Mr. Henry.[7] *See Hamilton Bank v. United States*, 6 Cl.Ct. 267, 270–71 (1984); *Southern States Henry Co-op., Inc. v. United States*, 4 Cl.Ct. 370, 372 (1984); *Barretville Bank & Trust Co. v. United States*, 2 Cl.Ct. 168 (1983). Although Mr. Howard might have explicitly or implicitly misrepresented his authority to Mr. Liggett,[8] plain-

---

5. In its opposition brief, plaintiff states, "No specific discussions were engaged in by the plaintiff and FmHA representatives as to the particular type of loan the $21,000 would come from, or *whether the $21,000 would be applied to the new credit or to the existing credit of Mr. Henry.*" (emphasis added). This latter contention is directly in conflict with Miles' clear understanding, as evidenced by the deposition testimony of E.W. Liggett (Miles' representative), that *the money it would receive from the FmHA loan to Mr. Henry—as guaranteed by defendant—would be used to repay the new extension of credit. See* Liggett Deposition at 17 (Question: "So, that was your understanding of it, that Mr. Howard was assuring you that if you extended further credit, you would get paid back on that?" Answer: "Yes, sir."). The assertion in Miles' brief is also in conflict with the complaint, which indicates that Miles extended new credit based on the understanding that it would be repaid for that credit from the $68,500 loan proceeds. *See* Amended Complaint ¶¶ IV, V, VI, X, XII, XIV. Although this understanding might not have been accurate or rea-

sonable, the court will not dispute its truthfulness for purposes of this motion.

6. A similar provision applies for operating loans. *See* 7 C.F.R. § 1941.23(b)(1) (1983) ("FmHA employees will not guarantee repayment of advances from other credit sources, either personally or on behalf of applicants, borrowers, or FmHA."). Consequently, the assertion that Miles did not know the type of loan from which it was going to be paid is immaterial.

7. In addition, although defendant concedes that "$21,000 was specifically scheduled by Mr. Henry and the FmHA to be applied to pre–1983 debt of Mr. Henry to plaintiff," Mr. Howard had no authority to bind the Government to this action to the extent it represents a guarantee of repayment. 7 C.F.R. § 1943.27 (1983).

8. The court sympathizes with Miles' position, particularly in light of previous cases filed with this court that have alleged misrepresentation of authority by FmHA personnel. For example,

tiff assumed "the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Ins. Corp.*, 332 U.S. at 384, 68 S.Ct. at 3. Because plaintiff has not met its "burden of showing that the acts upon which it relies were authorized," *Alabama Rural Fire Ins. Co. v. United States*, 215 Ct.Cl. 442, 458–59, 572 F.2d 727, 736 (1978), the court concludes that an implied-in-fact contract was not created between Miles and the FmHA.

Second, the alleged representations by Mr. Howard would have been unauthorized because farm ownership loans, as distinguished from operating loans, cannot be used to pay current-year operating expenses. The limited purposes of farm ownership loans are set forth at 7 C.F.R. § 1943.16 (1983). These loans can be used to purchase and improve real estate, provide land and water development on the farm, refinance debts, pay reasonable expenses incidental to obtaining the loan, and finance a nonfarm enterprise. In contrast to an operating loan, a farm ownership loan may not be used to pay annual operating expenses. *See* 7 C.F.R. § 1941.16(b) (1983).[9] Accordingly, if Mr. Howard guaranteed repayment from the proceeds of the farm ownership loan for the farm supplies provided by Miles on credit, he did so without actual authority; the farm ownership loan could not be used to pay for the credit arising from the provision of farm supplies, which was a current-year operating expense of Mr. Henry's.

Miles argues that no distinction as to loan type was made by Mr. Howard when he guaranteed repayment of the new extension of credit. Mr. Liggett states in his deposition: "Mr. Howard did not designate a certain loan that my money was coming from. It was just that my money was coming. And it didn't make any difference to me where, sir; just that it was coming, and I accepted this, then." As stated above, however, there is no fact dispute that the $68,500 FmHA loan, which forms the basis of Miles' complaint and which is the only loan that did not close, was a farm ownership, not an operating, loan. Despite Miles' asserted lack of knowledge, therefore, the fact remains that the ownership loan could not be used to pay Mr. Henry's current-year operating expenses, which included the extension of credit arising from the provision of farm supplies. It was plaintiff's responsibility to ascertain whether Mr. Howard had the actual authority to make the guarantees and assurances upon which it relied. *See Federal Crop Ins. Corp.*, 332 U.S. at 384, 68 S.Ct. at 3. By not inquiring as to the type of loan from which it would be repaid, plaintiff assumed the risk that Mr. Howard was acting within his authority; unfortunately for Miles, Mr. Howard did not have authority for the alleged guarantees he made on behalf of the FmHA. Consequently, an implied-in-fact contract was not created between Miles and the FmHA.

Furthermore, because Mr. Howard was acting without actual authority for the guarantees he allegedly made to Miles, plaintiff cannot employ the doctrine of equitable estoppel to establish an implied-in-fact contract. "In equitable estoppel cases, the law requires that plaintiff prove that the official whose act(s) is relied upon had the requisite authority." *Hazeltine Corp. v. United States*, 10 Cl.Ct. 417, 440 (1986) (citing *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 85, 591 F.2d 629, 635 (1979)), *aff'd* 820 F.2d 1190 (Fed.Cir.1987); *see Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1153–54 (Fed.Cir.1983); *Roberts v. United States*, 13 Cl.Ct. 774, 778 (1987), *appeal filed*, No. 88–1165 (Fed.Cir. Jan. 5,

---

see the court's discussion in *People's Bank & Trust Co. v. United States*, 7 Cl.Ct. 665, 669 (1985), and cases cited therein. Nevertheless, "[i]t is the courts' duty to follow the law, not make new law because of sympathy with plaintiffs' plight arising from the factual situation at bar." *Roberts v. United States*, 13 Cl.Ct. 774, 778 (1987), *appeal filed*, No. 88–1165 (Fed.Cir. Jan. 5, 1988).

9. In support of this point, defendant also provides the affidavit of James B. Dunmore, the FmHA's Chief of Farmer Programs for Kentucky. Plaintiff does not dispute that farm ownership loans cannot be used to pay current-year operating expenses.

1988). Because Miles has not met this burden, the court cannot apply equitable estoppel against the Government.

 Miles' contention that it was, in effect, an intended third-party beneficiary of a contract between Mr. Henry and the FmHA must also fail. To recover as a third-party beneficiary, Miles must establish the existence of a contract between Mr. Henry and the FmHA and also show that it was the express or implied intention of those parties to benefit Miles. *See Metzger, Shadyac & Schwarz v. United States,* 12 Cl.Ct. 602, 605 (1987). Here, as in *Metzger,* it is not necessary to go further than point out that Miles has not put forward any facts necessary to support the existence of a contract between Mr. Henry and the FmHA. Mr. Henry only had a farm ownership loan application pending before the FmHA. Although the loan was approved, it never closed. Until the loan closed, no binding contract between Mr. Henry and the FmHA existed.[10] *Cf. Cutler–Hammer, Inc. v. United States,* 194 Ct.Cl. 788, 794–95, 441 F.2d 1179, 1182–83 (1971); *Empresas Electronicas Walser, Inc. v. United States,* 223 Ct.Cl. 686, 688, 650 F.2d 286 (1980); *People's Bank & Trust Co. v. United States,* 11 Cl.Ct. 554, 568 (1987). Consequently, Miles cannot recover as a third-party beneficiary. *See Metzger,* 12 Cl.Ct. at 606.

 Nevertheless, Miles argues that the FmHA's decision to cancel the loan was arbitrary, capricious, and an abuse of discretion and that a contract thus should have come into existence. Given Mr. Hen-

ry's conversion of property on which the FmHA held a lien, however, the court disagrees. The regulations pertaining to farm ownership loans clearly permit the FmHA to cancel a loan after approval but before closing if the applicant's eligibility conditions change. *See* 7 C.F.R. §§ 1943.-35(c), 1943.38(c)–(d) (1983). Under 7 C.F.R. § 1943.12(a)(5) (1983) ("Farm ownership loan eligibility requirements"), an applicant for a farm ownership loan must have "the character (as related to debt repayment ability and reliability), managerial ability and industry to carry out the proposed operation." Because Mr. Henry's conversion of secured property reflects negatively on his repayment reliability, the court cannot conclude that the FmHA's decision to cancel the loan was arbitrary, capricious, or an abuse of discretion.[11]

### Conclusion

For the reasons expressed above, the court finds that, viewing the factual allegations in the light most favorable to plaintiff, an implied-in-fact contract did not exist between Miles and the FmHA. Accordingly, defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. Each party shall bear its own costs.

It is so ORDERED.

---

**10.** The Certification Approval form executed on November 3, 1983 states that the loan has been approved "subject to availability of funds and *other conditions required by the Farmers Home Administration."* (emphasis added). As explained below, the loan did not close because Mr. Henry, after loan approval but before closing, failed to meet one of the farm ownership loan eligibility requirements, 7 C.F.R. § 1943.12(a)(5) (1983).

**11.** In its complaint, Miles also alleges that the FmHA failed to follow proper procedures in cancelling Mr. Henry's loan. Specifically, Miles contends that it did not receive adequate notice of the cancellation, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–

706 (1982). However, "the APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it." *American Air Parcel Forwarding Co. v. United States,* 718 F.2d 1546, 1552 (Fed.Cir.1983) (citing *Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977)), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984). Consequently, because the court has concluded that an implied-in-fact contract was not created between Miles and the FmHA, it cannot consider Miles' APA claims. In any event, Miles has not pointed to any FmHA regulations that were violated by the agency in deciding not to close the farm ownership loan.