In re GROWERS–RANCHERS, LTD., Debtor.

The EMPIRE PARTNERSHIP, Plaintiff-Appellee,

v.

UNITED STATES of America, FARMERS HOME ADMINISTRATION, Defendant–Appellant.

BAP No. AZ–89–1038 MePeR.
Bankruptcy No. B–84–0761–PHX–RGM.
Adv. No. 87–492 RGM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 18, 1989.

Decided Feb. 15, 1990.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellant.

Michael D. Guinan, Bryan, Cave, McPheeters & McRoberts, Phoenix, Ariz., for plaintiff-appellee.

Before: MEYERS, PERRIS and RUSSELL, Bankruptcy Judges.

**916**

MEYERS, Bankruptcy Judge:

## I

The state director of a federal lending agency represented to a debtor who filed for protection under Chapter 11 of the Bankruptcy Code ("Code") that no post-petition interest would be charged on loans previously advanced to the debtor. The United States subsequently disputed the authority of the state director to make such a determination. The post-petition interest was thus charged to and collected against the debtor's successor in interest, prompting this action for its recovery. Following a trial the trial court granted judgment for the plaintiff, upholding the actions of the agency director. We REVERSE.

## II

### FACTS·

In September, 1978, and January, 1979, the Farm Home Administration ("FmHA") made emergency loans to·Growers–Ranchers, Ltd. ("Growers") in sums of $238,800 and $761,200 for use in Growers' farm operations in Arizona. The loans were secured by a deed of trust on Growers' farmlands. Growers and its shareholders filed Chapter 11 petitions on March 23, 1984. Thereafter, Arizona State FmHA Director Richard Smiley ("Smiley") determined that FmHA was undersecured and that post-petition interest would not be allowed on the FmHA loans.

With Smiley's assistance, the United States Attorney for the District of Arizona filed a proof of claim with the bankruptcy court on August 24, 1984. In January 1985, FmHA and Growers entered into negotiations that culminated in a court-approved agreement. Under this agreement FmHA advanced funds to Growers to be used to pay two secured creditors and certain other expenses; in exchange, FmHA took back assignments that enabled FmHA to enhance its security position. During the negotiations Smiley also orally informed Growers that no post-petition interest had accrued or would accrue on its outstanding loans.

One year later, on January 10, 1986, Empire Partnership ("Empire") contracted for the purchase of Growers' assets. The court-approved sale agreement specified that the FmHA lien must not exceed $2,077,600.

In anticipation of the close of escrow some months later, Empire requested a pay-off statement from FmHA. FmHA stated that the debt now stood at $2,193,-867, which included post-petition interest. Empire protested that according to the sale agreement, the debt could not exceed $2,077,600. To close the transaction, Empire paid $2,077,600 to FmHA and the disputed amount (now grown to $121,835) went into escrow pending judicial resolution. The sum was subsequently delivered to FmHA without prejudice to the plaintiff's claim. Empire brought a complaint seeking a judicial determination that its indebtedness to FmHA had been satisfied by the payment of $2,077,600 and to recover from FmHA the disputed $121,835. Judgment was granted in favor of Empire and this appeal ensued.

## III

### STANDARD OF REVIEW

■ In reviewing this judgment of the bankruptcy court, findings of facts should not be overturned unless clearly erroneous; conclusions of law are considered de novo. *See In re Windmill Farms, Inc.,* 841 F.2d 1467, 1469 (9th Cir.1988); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987); Bankruptcy Rule 8013. Application of contractual principles is a matter of law, and although issues of contract interpretation are mixed questions of law and fact, such issues are still subject to de novo review. *See Miller v. Safeco Title Insurance Co.,* 758 F.2d 364, 367 (9th Cir. 1985); *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 417 (9th Cir. 1984); *In re San Joaquin Estates, Inc.,* 64 B.R. 534, 535 (9th Cir. BAP 1986).

## IV

### DISCUSSION

Appellant United States raises two main issues: First, whether after the filing of

debtor's Chapter 11 petition Smiley bound the United States to his decision not to pursue post-petition interest on the FmHA loans; and second, whether alleged reliance by Growers and Empire upon Smiley's representations will estop the United States from pursuing its claim to the post-petition interest. The United States is entitled to prevail on both issues.

## A. *Smiley Exceeded his Authority in Foregoing the Interest*

■ In dealing with Growers' bankruptcy filing Smiley exceeded his limited authority. Apparently without consultation with FmHA attorneys he improperly assessed and acted on legal matters by representing to the debtor that post-petition interest would not accrue.

The authority and responsibilities of a State Director of the FmHA toward a borrower who subsequently declares bankruptcy are governed by administrative laws in effect at the time. In 1984, provisions of the Code of Federal Regulations allowed Smiley to take different courses of action toward a bankrupt borrower depending on the debtor's overall holdings. However, these same provisions also required Smiley to coordinate his actions with the FmHA Office of General Counsel ("General Counsel").

In a "no-asset" case, the State Director was not to file a proof of claim. In an "asset" case, the Director could either (1) liquidate the secured property by foreclosure if its value were less than the debt, the debtor had no other assets and the borrower abandoned all interest in the security; or (2) file a proof of claim with the General Counsel for forwarding on to the United States Attorney.

Smiley determined that Growers was an asset case and properly filed a proof of claim. However, Smiley then violated the explicit limits of his authority by making certain legal conclusions, apparently without consulting with the General Counsel.

He decided that FmHA was not fully secured on the debt and that some unknown amount was probably uncollectible by FmHA. From these assessments he inferred that FmHA would not meet the requirements for post-petition interest on secured claims as stated by Section 506(b) of the Code.[1] The following January he represented to Growers that no post-petition interest would accrue on FmHA's loans.

These latter actions overstepped Smiley's authority. As stated by 7 C.F.R. Section 1962.47(b)(3) (1984):

> ordinarily, when the value of security is not more than the amount of FmHA liens and any prior liens against it plus any homestead or other exemptions that apply to it as specified in a State supplement or as determined by OGC, an effort will be made to get the security released to FmHA. A petition for abandonment may be referred by OGC to the U.S. Attorney.... When the bankruptcy judge orders security released to FmHA, it will be liquidated unless the State Director approves continuation with the borrower.

In contravention of the Regulations, Smiley made no effort to get the security released after he determined that the value of the property did not exceed the amount of FmHA liens and any prior liens against the property plus any applicable exemptions. No petition for abandonment was sought. Rather, Smiley kept his silence until January when he informed Growers that FmHA would not be seeking the post-petition interest. Smiley cannot allege that he was exercising a discretion to "continue" with the debtor since even under that procedure General Counsel was to play the key role of specifying what new security or other instruments would be required. 7 C.F.R. Section 1962.47(b)(3)(ii)(B) (1984).

Moreover, even if Smiley's determination had been theoretically valid when made, his decision was divested of binding authority prior to Growers being informed of Smi-

---

**1.** Section 506(b) reads in pertinent part:
"(b) To the extent that an allowed secured claim is secured by property the value of which [after payment of trustee expenses] is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim ..."

ley's decision. This is because, from March, 1984 until January, 1985, Smiley apparently failed to act on his decision in any way, even to putting his conclusions in writing,[2] prior to the legitimate assumption of authority over the FmHA claim by the United States Attorney for the District of Arizona.

Jurisdiction over the claim passed to the United States Attorney in August, 1984, when that office filed the proof of claim. According to 7 U.S.C. Section 1981(d) (1984) the Secretary of Agriculture, and by extension the executives of FmHA, were divested of any authority to compromise, settle or adjust claims in excess of $25,000 after such claims had been referred to the United States Attorney General. Yet Smiley did not make his representations to the debtor until the following January, when the accrued post-petition interest on the Growers' loans was apparently $54,053.

■ Finally, even if Smiley had retained settlement authority as late as January of 1985, he received no consideration for abandoning the post-petition interest. FmHA did attain enhanced priority for its claims by reason of the advances it made to Growers in January, 1985. Such enhancement derived, however, from assignments of claims made to FmHA from other creditors of Growers who had been paid off by the advances made by FmHA. The assignments were not made by Growers.

■ Hence no consideration flowed from Growers to FmHA for the agency's promise about post-petition interest and such promise is therefore not enforceable. Government officials may not make contracts for which the government receives no benefit or consideration. *Metzger, Shadyac & Schwartz v. United States*, 12 Cl.Ct. 602, 605 (1987); *Montefiore Hospital Association of Western Pennsylvania v. United States*, 5 Cl.Ct. 471, 476 (1984).

**B.** *The United States is not Estopped by any Representations Made by Smiley to the Debtor*

■ Smiley's January, 1985 unauthorized representations to Growers about the post-petition interest are not effective to bind the government on an estoppel theory. As stated recently by the Ninth Circuit Court of Appeals, "[t]he Supreme Court has long held that the federal government 'may not be estopped on the same terms as any other litigant' from insisting on compliance with legal requirements." *Wagner v. Director, Federal Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir.1988). *See also Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *United States Immigration & Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

The Supreme Court policy is that the operations and contracts of the federal government are so vast and diverse that those dealing with the government must bear the burden of ensuring the legitimacy of the actions of government agents. Sometimes application of this policy may lead to hardship. In *Merrill*, for example, a farmer was denied federal crop insurance benefits because contrary to the representations of a committee acting as the agent for a government corporation his crop did not qualify under the applicable written regulations. Even under the hard facts that *Merrill* exemplifies the government must protect itself from unauthorized commitments by its agents; yet no such hard facts appear in this case.

An exception to the "no estoppel" rule exists where there is "an affirmative misrepresentation or affirmative concealment of a material fact by the government."·

---

**2.** Failure to reduce this abandonment of interest to writing was itself likely a violation of FmHA procedures, as stated by 7 C.F.R. Section 1864.-15 (1984):

"Form FmHA 456–1 will be used by debtors in making application for compromise, adjustment, or cancellation of their debts. Form

FmHA 456–1 also will be used by FmHA officials to document the necessary information in connection with cancellation or compromise of the indebtedness of living debtors when it is impossible and impracticable for legal or other reasons to obtain their application...."

*United States v. Ruby Co.*, 588 F.2d 697, 703–04 (9th Cir.1978). *See also Seva Resorts, Inc. v. Hodel*, 876 F.2d 1394, 1400 (9th Cir.1989); *Simon v. United States*, 756 F.2d 696, 698 (9th Cir.1985). Plaintiffs have demonstrated neither factual misrepresentation nor concealment by Smiley—rather, there appears to be only Smiley's promise that the post-petition interest would not be pursued.

The "no estoppel" rule also eliminates the plaintiff's claim that it is a third party beneficiary of Smiley's promise not to charge the post-petition interest. Smiley's bare representations cannot create a third party beneficiary status where no valid contract exists. *Miles Farm Supply, Inc. v. United States*, 14 Cl.Ct. 753, 758 (1988); *Metzger, Shadyac & Schwarz, supra*, 12 Cl.Ct. at 605–06. As detailed above, no valid contract existed because Smiley was not authorized to act as he did, no consideration was given by Growers and Empire cannot estop the government through a reliance argument.

## V

## CONCLUSIONS

Richard Smiley exceeded his authority as Arizona State Director of FmHA when he informed Growers that post-petition interest would not accrue on the FmHA claim. In making his original decision he violated FmHA procedures by failing to consult the agency's attorneys and failing to document his decision. After the proof of claim was filed by the United States Attorney, that office assumed jurisdiction over the claim for any amount exceeding $25,000; Smiley's representations to Growers purported to abandon an amount considerably in excess of that specific limitation.

Even if Smiley's statements to Growers had been authorized, no benefit or consideration was received by the government; therefore, no valid compromise agreement was made. No reliance that Growers or Empire may have had on such statements will estop the government from fully pursuing its claim, nor may Empire claim third party beneficiary status on a contract that never existed.

REVERSED.